DELLA McLEAN, ADMINISTRATRIX, V. OMAHA & COUNCIL BLUFFS RAILWAY AND BRIDGE COMPANY.*

FILED OCTOBER 5, 1904.  No. 13,602.

Directing Verdict. In an action by an administratrix to recover damages for the death of the decedent, alleged to have been caused by the negligence of the defendant, it is *held*, upon an examination of the record, that the court rightfully directed a verdict for the defendant because of the contributory negligence of the deceased.

ERROR to the district court for Douglas county: JACOB FAWCETT, JUDGE. *Affirmed.*

*Charles S. Lobingier, T. J. Mahoney* and *N. A. Crawford,* for plaintiff in error.

*W. J. Connell* and *John L. Webster, contra.*

AMES, C.

This is an action by an administratrix to recover damages from the defendant for having, as it is alleged, negligently caused the death of the decedent. The answer, besides denials, pleads contributory negligence. The defendant owns, maintains and operates a system of street and interurban electric railroad in and between the cities of Omaha and Council Bluffs. Double tracks of the railroad extend through "Avenue A" in Council Bluffs from the intersection of the latter with 14th street, in or near the settled part of the city, in a nearly direct line to a point at or beyond the corporate limits at a distance of two miles or thereabouts from the intersection. The scene

─────────────

* Rehearing allowed. See opinion, p. 450, *post.*

of the accident is on "Avenue A" in a sparsely settled out-skirt of the town, from a mile to a mile and a half from 14th street. At that place the avenue had not been brought to a regular grade, and there was no pavement or sidewalk, but there was a traveled wagon way alongside the railway, apparently not much used by the public. The street rail-way rails were of heavy steel, of the T pattern, laid upon exposed ties from eighteen inches to two feet above the surface of the ground adjacent to the right of way, so that the roadbed presented the general appearance of that of an ordinary commercial railroad in a rural neighborhood. The avenue was unlighted and the accident happened at about 20 minutes past twelve o'clock of a dark and cloudy night. What occasion the deceased had for being in the locality, or where or when he went upon the roadbed is not known, but he was walking toward the west, on or near the outer rail of the track used by cars moving in the same direction, and, at a point about midway between two streets intersecting the avenue, he was struck by one of the defendant's cars approaching from the east, thrown violently into the air, and instantly killed.

The specific negligence charged is that the car was negligently and carelessly propelled and managed, and that the defendant's agents and servants in charge of it failed to give the usual and ordinary signals of approach, or to employ the usual appliances to prevent the accident, and that "had proper and usual precautions been taken and the proper and usual appliances been employed" the deceased "could and would, by the exercise of diligence and care, have been seen by the defendant's agents and servants in charge of said car in time to have stopped said car before the same struck" the deceased. It is also alleged that the car was being propelled "at a high rate of speed," but the rate of speed is not charged to have been excessive or negligent, or to have contributed unduly to the casualty. Indeed, such an accusation would have been somewhat inconsistent with the claim that, by the exercise of proper care and diligence, the deceased could

and would have been seen, and the car stopped in time to prevent striking him.

The allegation that there was a lack of proper and usual appliances is not substantially supported by evidence. All that the record discloses in that regard is the vague assertion of some of the witnesses that the headlight appeared to them to be dim, but the degree of its brilliance is not attempted to be described, and that one was burning is not disputed. The car itself was brilliantly lighted by electricity, so as to illuminate surrounding space to a distance of several rods in every direction. No one but the motorman is shown to have been in charge of the car, and he was not produced as a witness. What he knew or did about the matter is unknown except his statement, made at the time and admitted in evidence as a part of the *res gestæ*, that he saw the deceased walking on the roadbed near the outer rail of the track and supposed he would get off, but that he, the deceased, did not have time. How far apart were the car and the deceased when the latter was first seen by the motorman is not shown, so that it is impossible to say whether, after that time, there was opportunity for stopping the car and thereby preventing the accident. There is evidence from which it may be inferred that a gong was not sounded nor other signal given after the discovery of the deceased, but it may also be inferred that the discovery and the collision were so nearly simultaneous that opportunity for so doing was wanting.

"A high rate of speed" in an outlying district is not complained of by the petition as negligent. How high it was cannot be ascertained from the evidence, which upon this point is conjectural. The witnesses vary in their estimate from the ordinary rate of 12 miles an hour to 20 and 30. No two of them exactly agree. At the middle rate of 20 miles an hour the car was moving about 30 feet a second. Within what distance it could have been stopped may be inferred from the fact that it was stopped, apparently as soon as possible, after the happening of the

32

accident, but run 150 feet or more after that event. If under the pleading and evidence the motorman can be charged with negligence, it is for lack of vigilance enabling him to discover the deceased sooner. But the night was dark, and the street was unlighted, and it is not claimed that the illumination from the car or headlight extended, or ought to have extended, more than 150 feet from the car, a distance that, at the supposed rate of speed, would have been covered in five seconds.

The evidence was all offered by the plaintiff and is, of course, free from conflict. When she rested, the court, upon motion, directed a verdict for the defendant, upon the expressed ground that the deceased was a resident of the city of Council Bluffs and familiar with the scene of the accident and with the manner in which the defendant operated its trains, and that he was negligent in walking upon the track of the railroad without keeping a vigilant lookout for cars which he knew were likely to approach him from behind; and that the car which caused his death might, with ordinary care, have been seen approaching for more than a mile before it reached the place where the accident occurred. The plaintiff prosecutes error, but after a careful examination of the record we are convinced, contrary to our impression at the close of the argument, that the opinion of the learned trial judge was right, and recommend that the judgment of the district court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be

AFFIRMED.

The following opinion on rehearing was filed April 19, 1905. *Former judgment of affirmance adhered to:*

1. **Directing Verdict.** On a motion to direct a verdict for the defendant, the plaintiff is entitled to every inference which the

jury would have been warranted in drawing from the evidence adduced.

2. **Personal Injuries: ACTION: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY.** In an action for personal injuries, where contributory negligence is relied upon as a defense, and where, from the facts and circumstances proved, reasonable minds may draw different conclusions concerning the negligence of the plaintiff's intestate, such question should be submitted to the jury.

3. **Evidence** examined, and *held* not sufficient to bring the injury within the reason of the "humane doctrine" or "last chance."

OLDHAM, C.

The former opinion in this case is officially reported *ante*, p. 447.

A rehearing was granted for the further consideration of the question as to whether, under all the facts and circumstances surrounding the injury as shown by the evidence offered by plaintiff in the trial of the cause in the district court, the trial court was justified in directing a verdict for defendant on the doctrine of contributory negligence; and also for the purpose of further examining plaintiff's contention that the facts and circumstances surrounding the injury, as shown by plaintiff's evidence, brings the case within the reason of the "humane doctrine" or "last chance."

We agree with plaintiff's contention that, on a motion to direct a verdict for the defendant, the plaintiff is entitled to every inference which the jury would have been warranted in drawing from the evidence adduced. Now, it is clearly proved that at the point where the injury occurred there were two lines of defendant's street. railway tracks, running east and west, and that there was a space of a few feet between and separating them. It was also proved that the north line of track was used by the cars going west, and that the south line of track was used by the cars going east. It was also shown by the testimony that the deceased was familiar with the running of these cars, as he had resided for a long. time in Council Bluffs,

and passed over these car lines in going to and from his place of business in Omaha two or three times a day. The trial judge concluded from this testimony that deceased was clearly negligent in walking westward on the north track without looking behind him for an approaching car, because he must have known that the west bound cars used this track. This is perhaps a legitimate conclusion under the facts and circumstances proved.

It is also in evidence that the accident occurred after midnight, and was caused by the car making the last run for that night, which was then from 8 to 10 minutes behind time. Now, it is urged by counsel for plaintiff that if it was proper from the evidence introduced to impute to the deceased knowledge of the track on which the west bound car was accustomed to run, it was also competent to impute to him knowledge of the fact that the last car going west that night would, if on time, have passed the place where the injury occurred 5 or 10 minutes before the injury; and that this fact, if believed by the jury, might excuse him from the imputation of contributory negligence in not looking behind him for an approaching car coming from the west. If this directed verdict stood only on the doctrine of contributory negligence imputed to deceased for walking westward on defendant's north track at the time the injury occurred, without looking behind him for an approaching car, I would incline to the opinion that such question was one of fact for the jury, rather than one of law for the court. Contributory negligence is an affirmative defense in actions for personal injuries of this nature, and where reasonable minds may draw different conclusions from the conduct on which negligence is predicated, such question is for the determination of the jury and not of the court.

We have carefully reexamined the evidence contained in the record to see whether or not it tends to show any fact or circumstance that would bring the case within the reason of the "last chance" doctrine. This doctrine, as applied to this case, is based on the duty which the de-

fendant would owe on discovering the deceased in a perilous position, from which he apparently could not and would not escape, to use every reasonable means at the command of the servants in charge of its cars to stop the car for the purpose of avoiding the accident. This doctrine has found favor in this court, and was recently applied in the case of *Omaha Street R. Co. v. Larson,* 70 Neb. 591. We do not understand that it is the duty of the operators of a street railway car to stop the car as soon as they see a foot passenger occupying the track in front. We think that ordinarily the motorman may proceed toward such foot passenger on the presumption that such passenger will step off the track before the car reaches him, until it becomes apparent that for some reason such passenger, either on account of deficient hearing or other inability to apprehend his danger, cannot and probably will not be able to get off the track; and that then it becomes his duty to use all reasonable means at his command to stop the car. Now, the evidence in the case at bar wholly fails to show that the motorman, after discovering the perilous position of the deceased, could, by the use of all means at his command, have stopped the car and thereby avoided the accident. Consequently, we do not think that the evidence in the record brings this case within the reason of the "humane doctrine," nor do we find any competent evidence in the record to show actionable negligence on the part of the defendant which was the proximate cause of the injury. From a reexamination of the record, the accident appears to us to fall in that class of casualties frequently met in life, in which there is a serious injury sustained for which no one is legally to blame.

AMES and LETTON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the former opinion is adhered to.

AFFIRMED.