LAIN MCKENNAN, APPELLEE, v. OMAHA & COUNCIL
BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 3, 1914. No. 17,698.

1. **Street Railways: PERSONAL INJURIES: NEGLIGENCE: QUESTION FOR
   JURY.** In an action to recover for personal injuries alleged to
   have been caused by defendant's negligence, where there is a
   conflict of evidence, that question should be submitted to the
   jury.

2. **Appeal: CONFLICTING EVIDENCE.** Where the evidence is conflicting
   as to the nature and extent of plaintiff's injuries, the verdict of
   the jury on that question will not be set aside.

3. **Street Railways: USE OF TRACK: INSTRUCTIONS.** Where the accident
   which caused plaintiff's injuries occurred by reason of his having
   driven on and along the track of a street railway at a point
   between street intersections or crossings, it was error to instruct
   the jury that "Defendant had the legal right to operate its cars
   over and upon its tracks at the time and place in question, and
   that teamsters have the legal right to cross the street at any
   point thereon, and their rights in this respect are equal and
   reciprocal, that is, each has the right to the use of the streets
   in the ordinary and usual manner, and in doing so it is necessary
   for each to take into consideration the rights of the other."

4. **Trial: REFUSAL OF INSTRUCTIONS.** It is error for the trial court to
   refuse to give a requested instruction which fairly states the
   defendant's theory as to the cause of the accident, where there
   is evidence which would sustain such theory.

5. ———: ———. It was error for the trial court to refuse an in-
   struction, tendered by defendant as soon as it was ascertained
   that the court would not give a like instruction on his own
   motion; the tender having been made within a reasonable time
   before the instructions were read to the jury.

APPEAL from the district court for Douglas county:
ABRAHAM L. SUTTON, JUDGE, *Reversed.*

*John L. Webster* and *W. J. Connell,* for appellant.

*John A. Moore, H. S. Daniel* and *Dunham & Aye, contra.*

BARNES, J.

Plaintiff brought this action to recover for injuries alleged to have been sustained by him by a collision between one of the defendant's street cars and the plaintiff's wagon. The accident occurred on Twenty-fourth street in the city of Omaha about the 20th day of January, 1911. The cause was tried in the district court for Douglas county, plaintiff had the verdict, judgment was rendered thereon for $3,900, and the defendant has appealed.

It was alleged in plaintiff's petition that the defendant's motorman negligently failed to have his car under control, and negligently failed to stop the car before striking the plaintiff's wagon, when, by the exercise of ordinary care, he could have stopped his car in time to have avoided the collision; that the motorman failed to keep a lookout, and observe the dangerous situation in which plaintiff was placed immediately before the accident occurred.

By its answer defendant denied that the plaintiff's wagon was struck when he was in the act of driving from the track; and averred that there was ample room between its tracks and the curb for plaintiff to have driven his team in safety; that plaintiff knew of the frequent passage of cars upon defendant's parallel tracks on Twenty-fourth street and knew that a car was south-bound on the west track, and nevertheless the plaintiff, at the time when the south-bound car was in the act of passing plaintiff's wagon, turned his horses toward and partially onto the said track, so that the front end of the car came in contact with the singletree or whiffletree, and that thereupon the said car was immediately brought to a stop, so that no damage was inflicted upon either the horses or the wagon, and that the plaintiff, without any real occasion therefor, and without any impending danger, jumped from said wagon to the street, and that his injuries, if any, were the result of his own misconduct and negligence. The answer also denied that defendant was guilty of any negligence whatsoever, and all of the other averments of the petition were denied. The reply was a general denial of the averments of the answer.

It appears that when the accident occurred plaintiff was driving along Twenty-fourth street with a wagon drawn by a team of mules, and on that street the defendant had a double street car track. The north-bound cars ran on the east track, and the cars south-bound ran on the west track. Plaintiff was driving in the clear space between the west track and the curb, and was going south between Nicholas street and Cuming street. According to plaintiff's testimony he looked back about the distance of a block, or a block and a half, and saw no car coming. He claimed that he turned out onto the west track to pass a wagon which was going south ahead of him, and drove on the track 50 or 60 feet; that he thought about the car, and looked back, and saw it coming about 40 or 50 feet away at the rate of 10 or 12 miles an hour; that he then turned his mules west, but before he succeeded in getting entirely off from the track the car overtook him and struck the rear end of his wagon. It appears that the car was so nearly stopped that it did not injure or mar the wagon, but the jar of the impact caused plaintiff to fall off the wagon seat, and in falling he struck the pavement or curb, and thus sustained the injuries of which he complained.

There was a conflict in the evidence on the question of the presence of another team and wagon on the west side of the street where the accident occurred. All of the plaintiff's witnesses but one testified that they saw no other team or wagon at or near the place where the plaintiff's wagon was struck by the car. So it is somewhat doubtful if the plaintiff was justified in driving upon the street car track at all, but we think that question was properly left to the determination of the jury.

Plaintiff's witnesses testified, in substance, that, when they first noticed the wagon and car, they were probably 10 or 15 feet apart; that they did not see the plaintiff go upon the track to pass around another wagon in front of him that after the accident occurred the wagon was right in front or near the engine house on Twenty-fourth street; that they first saw the car and the wagon at about the same time, when they were about 10 feet apart, and that

the car was going from 8 to 12 miles an hour when they first saw it. They also testified that they heard a noise greater than would be produced by the natural speed of a car; that it seemed as if the brakes were being applied, and that noise attracted their attention; that they saw the wagon just turning off the track, and the mules were on the trot; that at the moment the wagon was struck McKennan lunged sidewise off from the wagon; that, when they got to where McKennan was, he was standing against a telephone pole; that he was dizzy, and complained of his back and ankle. Some of the witnesses, however, testified that plaintiff said he was "all right." They all testified that he got onto the wagon with the help of one of the bystanders, and drove away. Dean Berlin testified that he was standing at the northeast corner of Twenty-fourth and Cuming streets, near the drug store, and at the time when the car struck the wagon, the wagon was going off the track; that the first thing that he noticed or observed out of the usual was hearing the motorman apply his brakes. The brakes were being applied at the time he turned, that is why he noticed it. He said: "I turned at the same time I heard the motorman apply the brakes." To the question, "So far as your observation went, the motorman was doing what he could to stop the car?" He answered, "I presume that he was." The witness further testified that he heard a scraping, jarring sound or noise of brakes applied in stopping the car. When McKennan got onto his seat on the wagon after the accident, he picked up his lines and drove away.

The evidence was conflicting on the question of the nature and extent of the plaintiff's injuries, and the finding of the jury on that question ought not to be set aside. On the trial counsel for the plaintiff caused him to exhibit his person to the jury. To this the defendant strenuously objected. It appears that plaintiff had been operated upon some considerable time before the accident for appendicitis; that some time after the accident occurred he was again operated upon for what is termed a floating kidney, and later on the doctors performed what they called an

"exploratory" operation upon the plaintiff, in order, as they claimed, to ascertain the cause of the pain from which plaintiff alleged he was suffering as a result of the accident. While in ordinary cases it would not be error for the plaintiff to exhibit his wounds to the jury, still in the instant case it would seem that he ought not to have been permitted to expose the several scars above mentioned to the inspection of the jury; and it is quite probable that an examination of those scars, some of which were in no manner attributable to the injury of which he complained, may have influenced the jury to some extent.

A more serious question, however, arises on the instructions given by the court to the jury. By paragraph 7 of those instructions the court said: "You are instructed that defendant had the legal right to operate its cars over and upon its tracks at the time and place in question, and that teamsters have the legal right to cross the street at any point thereon, and their rights in this respect are equal and reciprocal, that is, each has the right to the use of the streets in the ordinary and usual manner, and in doing so it is necessary for each to take into consideration the rights of the other." We think this is an incorrect statement of the law. The accident occurred near the middle of the block between street intersections; and, while the instruction is correct as to the rights of the street car company and the plaintiff at intersections or cross streets, it fails to properly distinguish between the rights of the company and the plaintiff at other places on the street.

The point involved in this action was the right of McKennan to drive upon and along the track, and it is apparent that the language used by the court was applicable only to crossing a street car track at street intersections. Again, this is not a case where McKennan was attempting to cross the street at all. This is a case where he was driving upon and along the track in front of an on-coming car; and, as applied to that situation, it is a statement that plaintiff, as a matter of law, had a right equal to the street car company to drive upon and along its tracks. It was equivalent to saying that plaintiff had such right, and the

street car must slow down, and remain behind his wagon until it suited his convenience to get out of its way; that the motorman was bound to look out for McKennan, and not permit the car to come in contact with his wagon; that plaintiff, being upon the track, had an equal right to be there, and was not required to look out for a car coming up behind him, nor was he required to get off the track to let the car go by him.

In *Harris* v. *Lincoln Traction Co.*, 78 Neb. 681, it was held: "One who negligently attempts to cross a street railway track in front of an approaching car cannot recover for injuries sustained by being thrown from his wagon by impact with the car, unless those in charge thereof wilfully or wantonly produce the collision." In the opinion in that case it was said: "The plaintiff was negligent in attempting to cross defendant's tracks without looking or listening for an approaching car, and this is especially true where, as in this case, he crossed the tracks in the middle of a block. Having contributed to the accident by his own negligence, there is no principle of law which will allow him to recover, unless he shows that he was wilfully and wantonly run down by those in charge of defendant's car." If we apply the principle thus announced to the case at bar, it does not justify the instruction complained of.

Some of the reasons why the street car company has, and must have, a preferential right to occupy its tracks, especially at points other than street intersections, are as follows: The franchise right granted to a street car company to occupy a portion of the streets and operate its cars thereon is authorized by the laws and the constitution of the state and by a vote of the people. McKennan, as well as other teamsters, constitute a part of the public which made the grant. To so occupy the street is to conserve a public utility, to wit, the rapid transportation of vast multitudes of people. It is unfair and unjust to the public to say that one may drive his team upon and along a track under an assertion that he has an equal right to be there, and thus hinder and delay a car load or train load of other people, who are anxious to get to their point of destination.

Again, by the city ordinance introduced in evidence, the street car company had the right to operate its car at the point where the accident occurred at a speed of 15 miles an hour. It is a matter of which the courts should take notice that, if teamsters can assert an equal right with the street car company to occupy the track at any point, and thus drive in front of a heavy and rapidly moving car, it means destruction of property and human life. The plaintiff had no right to say, and the court should not have said, that he had an equal right with the defendant company to drive with his wagon upon defendant's track at that particular time and place, in front of the moving car.

Again, paragraph No. 10 of the court's instructions would seem to be in conflict with that part of instruction No. 7 above quoted. Instruction 10 reads as follows: "You are instructed that the defendant, the Street Railway Company, had the right to run and operate its cars along and upon the tracks on Twenty-fourth street, at and near where the accident to plaintiff happened, and in the exercise of said right was entitled to operate its said cars at a reasonable rate of speed within the limits of the city ordinance, taking into account all surrounding and existing conditions at the time, and in doing so, to avoid injury to others, or to the team or wagon of plaintiff coming or being upon its track, was required to exercise only such ordinary care as would naturally be exercised by an ordinarily prudent person." It is difficult to see how the two instructions can be harmonized, and therefore the jury must have been, to some extent, confused and misled thereby.

The defendant requested certain instructions to the jury which were refused. Among them was paragraph 15, which reads as follows: "You are instructed that, if it is shown by the evidence in this case that plaintiff, McKennan, suddenly turned his team from the clear space on the west side of Twenty-fourth street upon the south-bound track without looking for a car back of him, at a time and place when, if he had looked, the approaching car toward the south would have been seen by him, and that, after he

did so, the motorman in the exercise of ordinary care did not have time to stop his car before colliding with his wagon, no recovery can be had in this action, and your verdict should be for the defendant." This instruction seems to be a correct statement of the law as applied to the facts shown by the evidence in this case. Many of plaintiff's witnesses testified that what called their attention to the accident was the fact that the motorman applied the brakes to the car for the purpose of stopping it. They testified to hearing the grinding sound made by the application of the brakes while the car was distant from 8 to 12 feet from the plaintiff's wagon. Defendant's motorman testified, and his testimony was not disputed by any one, that he did everything in his power to stop the car as soon as he discovered the fact that plaintiff was not liable to get off the track. Under the circumstances it was error for the trial court to refuse to give the instruction above quoted.

It also appears that defendant requested the court to give request No. 16 to the jury, which reads as follows: "You are instructed, in making an 'emergency stop' for the purpose of avoiding coming in collision with plaintiff's wagon, that if from the evidence it appears that the motorman was confronted with a situation of danger requiring immediate and prompt action on his part, and that there were two methods of stopping the car, either of which would be usual and proper, he would have the right under such conditions to use whatever method in the exercise of his judgment and experience as a motorman would be most effectual for stopping the car and avoiding a collision with the plaintiff's wagon; and, if in this regard he exercised in good faith his best judgment, no liability would be attached to the defendant by reason of using and adopting the method he did adopt, and this will be true, even if you might conclude that some other method which he did not follow would have been, under the conditions and circumstance, the most effective for stopping the car." It appears that this instruction was refused because the defendant did not tender it to the court within a suitable time before the instructions were given. By the affidavits in this case, it

appears that the other instructions were tendered the evening before the cause was submitted to the jury; that, when counsel for the defendant ascertained that the court's instructions did not cover that point, he prepared the request, and presented it to the court more than an hour before the instructions were read to the jury, and the reason the court gave for refusing it was that it had not been tendered at a time within his rule. We think the reason for refusing the instruction was not adequate; that when the request was tendered, and the court was informed that counsel had failed to discover the omisson of such an instruction within the time fixed by the rule, the court should have considered the showing sufficient, and the instruction should have been given. We are not disposed to interfere with the ordinary and reasonable rules of the trial court as to the time when instructions should be tendered, but under the circumstances it would seem that an instruction on this point should have been given.

It is not our purpose to comment upon the nature and extent of defendant's injuries as shown by the evidence, nor do we believe that we should invade the province of the jury by holding that the evidence was insufficient to entitle the plaintiff to recover. It is not necessary to discuss any of defendant's other assignments. For the errors in giving and refusing instructions, we are of opinion that the defendant is entitled to a new trial. The judgment of the district court is therefore reversed, and the cause is remanded for further proceedings.

REVERSED.

ROSE, FAWCETT and SEDGWICK, JJ., not sitting.