LAIN MCKENNAN, APPELLEE, V. OMAHA & COUNCIL BLUFFS
STREET RAILWAY COMPANY, APPELLANT.

FILED DECEMBER 4, 1914.   No. 17,698.

1. **Street Railways:** USE OF STREETS. The general public has an equal right with a street car company upon a public street of a city, but has not at all times the same right upon the track of the street car company. The public has a complete right to cross or drive upon the street car tracks, but not so as to hinder or interfere with the cars operated thereon.

2. ———: OPERATION OF CARS: DUTY TO AVOID COLLISIONS. The motorman of a street car is not necessarily obliged to stop his car when he sees a man driving in a vehicle along the line of railway ahead of the car; but he may continue to run the car in a proper manner until it appears that the driver is in danger and is unaware or heedless of his danger. It is then his duty to use all reasonable care and diligence to avoid a collision. Seeing a man driving along the track, the motorman may assume that he will turn aside and out of the way of the car, but he cannot rest on the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle.

3. ———: ———: CARE REQUIRED. In such a case the motorman in charge of the car should use the care and diligence which an ordinarily prudent person would use under the circumstances.

4. ———: ———: COLLISIONS: LIABILITY. It is equally the duty of any person driving upon or across a street car track not to unnecessarily hinder, delay or impede the operation of cars thereon at the proper rate of speed at that time and place, and if he negligently does so, and by reason of such negligent act he is injured, he cannot recover, unless those in charge of the street car failed to exercise ordinary care to avoid a collision after they knew, or in the exercise of ordinary care should have known, his dangerous situation. *Omaha Street R. Co. v. Larson,* 70 Neb. 591.

5. **Evidence:** OPINIONS. Opinions of witnesses derived from observation are admissible in evidence when, from the nature of the subject under investigation, better evidence cannot be obtained; and this principle is applicable to indications of pain and suffering, even though observed some time after an injury.

6. **Appeal:** ADMISSION OF EVIDENCE: REVIEW. If testimony not properly admissible is brought out by a proper question, and no motion

to strike it out is made at the trial, the error is not subject to review.

7. Instructions, the substance of which are set forth in the opinion, *held* to be inconsistent with the main issue as stated by the court, and to be prejudicial to defendant.

8. Damages: PERSONAL INJURY: IMPROPER EXHIBITIONS. Exhibitions to the jury of scars of bodily injuries should not be permitted, unless they furnish evidence material to the issues to be determined.

9. Appeal: REQUESTED INSTRUCTIONS: REVIEW. A party, after having requested the giving of an instruction, cannot afterwards complain that it was erroneous.

Opinion on motion for rehearing of case reported in 95 Neb. 643. *Former opinion modified. Rehearing denied.*

LETTON, J.

In the former opinion in this case (*McKennan v. Omaha & C. B. Street R. Co.*, 95 Neb. 643), it was held that, there being a conflict in the evidence with relation to the circumstances surrounding the injury and also with reference to the extent of plaintiff's injuries, these questions were proper to be submitted to the jury. It was also held that the first paragraph of instruction No. 7 was incorrect as applied to the facts in this case. The language of this part of the instruction was not applicable, since the statement "that teamsters have the legal right to cross the street at any point thereon" had no relevancy to the issues. It was also said that this instruction is correct as to the rights of the street car company and plaintiff at intersection or cross-streets, but that it failed to properly distinguish their respective rights at other points in the street. We think the latter statement and the further criticisms of the instruction should be withdrawn.

In *Omaha Street R. Co. v. Duvall*, 40 Neb. 29, this court said: "Street railways are constructed and operated on public highways under grants of that right by municipal corporations. The grant is of a privilege to occupy and use these streets in conjunction with, and not to the exclusion of, the general public."

In *Olney v. Omaha & C. B. Street R. Co.*, 78 Neb. 767, it is said: "The right to use the streets of a city by the driver of a horse and the manager of a street car company are equal, and each must use it with reasonable regard for the safety and convenience of the other."

In *Stewart v. Omaha & C. B. Street R. Co.*, 88 Neb. 209, it is said: "Whatever the rule in some states may be with respect to the rights of pedestrians and street cars upon the streets of a city, the law in this state is settled that neither the street car nor the pedestrian has any priority or privileged right over the other; that an electric street railway company and an ordinary traveler upon the street are required to observe an equal degree of care to prevent accidents, and that neither has a right of way superior to that of the other. *Omaha Street R. Co. v. Cameron*, 43 Neb. 297; *Mathiesen v. Omaha Street R. Co.*, 3 Neb. (Unof.) 747; *Omaha Street R. Co. v. Mathiesen*, 73 Neb. 820; *Olney v. Omaha & C. B. Street R. Co.*, 78 Neb. 767."

Under ordinary circumstances, one who negligently attempts to cross a street railway track or to drive upon it in front of an approaching car cannot recover for injuries caused by a collision therewith, unless those in charge of the car fail to exercise ordinary care to prevent the accident after knowledge of his probable danger. *Omaha Street R. Co. v. Larson*, 70 Neb. 591; *McLean v. Omaha & C. B. R. & B. Co.*, 72 Neb. 447, 453; *Lindgren v. Omaha Street R. Co.*, 73 Neb. 628; *Chunn v. City & S. R. Co.*, 207 U. S. 302, 28 Sup. Ct. Rep. 63; 2 Nellis, Street Railways, sec. 462.

There was no intention to change the established rule in this state by the opinion in *Harris v. Lincoln Traction Co.*, 78 Neb. 681, in which case it was not quite accurately said that in such a case the defendant would not be liable, unless those in charge of the car "wilfully or wantonly" produce the collision. The words "wilfully" and "wantonly" being used disjunctively, the word "wantonly" evidently was not meant to express the idea of intentionally or wilfully, but that of "carelessly" or "negligently." *Lafayette & I. R. Co. v. Huffman*, 28 Ind. 287; *Cleveland, C., C. & St.*

*L. R. Co. v. Tartt,* 64 Fed. 823. It may be noted that this is the thought expressed in the instructions tendered by defendant.

A good statement of the proper rule is found in *Fujise v. Los Angeles R. Co.,* 12 Cal. App. 207, 216: "The sum of the adjudicated cases bearing upon the relative rights of street cars and citizens traveling in vehicles drawn by horses or other animals is that both have a right to use the street, but neither has the exclusive right. The motorman of a street car is not necessarily obliged to stop his car when he sees a man driving in a vehicle along the line of a railway ahead of the car; but he may continue to run the car in a proper manner until he is conscious of the fact that the driver is unaware or heedless of his danger. When he is thus conscious, it is his duty to use all reasonable care and diligence to avoid running the car into the vehicle. Seeing a man driving along the track, the motorman may assume that he will turn aside and out of the way of the car, but he cannot rest on the assumption so long as to allow his car to reach a point where it will be impossible for him to control his car or give warning in time to prevent injury to the man or vehicle." See, also, *Callahan v. Boston Elevated R. Co.,* 205 Mass. 422, 18 Am. & Eng. Ann. Cas. 510; *Indianapolis Traction & Terminal Co. v. Kidd,* 167 Ind. 402, 5 Street R. Rep. 204; *Acton v. Fargo & M. Street R. Co.,* 20 N. Dak. 434, 7 Street R. Rep. 499; *Greene v. Louisville R. Co.,* 119 Ky. 862, 7 Am. & Eng. Ann. Cas. 1126.

In the former opinion it was held that the refusal to give instructions Nos. 15 and 16 requested by defendant was erroneous. It appears, however, that instruction No. 15 was embodied in the charge of the court upon its own motion, though marked as refused when tendered by defendant. Instruction No. 16 was refused for the reason that it was not tendered to the court within a reasonable time. We considered this reason not adequate. Upon a critical examination of the language of the instruction, we are of the opinion that the court properly refused to give it. This instruction makes the standard of care the exercise of the

best judgment of the individual motorman.    The rule is laid down by the supreme court of the United States in *The Germanic,* 196 U. S. 589, as follows: "But it is a mistake to say, as the petitioner does, that if the man on the spot, even an expert, does what his judgment approves, he cannot be found negligent.    The standard of conduct, whether left to the jury or laid down by the court, is an external standard, and takes no account of the personal equation of the man concerned.    The motion that it 'should be coextensive with the judgment of each individual' was exploded, if it needed exploding, by Chief Justice Tindal in *Vaughan v. Menlove,* 3 Bing. N. C. (Eng.) *468, *475." In the case referred to, Chief Justice Tindal said: "Instead, therefore, of saying that the liability for negligence should be coextensive with the judgment of each individual, which would be as variable as the length of the foot of each individual, we ought rather to adhere to the rule which requires in all cases a regard to caution such as a man of ordinary prudence would observe."    The motorman was held to use that care and diligence which an ordinarily prudent man would use under the circumstances of the particular case.    "The standard is universal, unless in those cases where the law imposes an absolute liability." 1 Shearman and Redfield, Law of Negligence (6th ed.) sec. 9b; *Daily v. Burlington & M. R. R. Co.,* 58 Neb. 396; *Harrington v. Los Angeles R. Co.,* 140 Cal. 514; *McIntyre v. Orner,* 166 Ind. 57; *Barnes v. Danville Street R. & L. Co.,* 235 Ill. 566.

A number of assignments of error were made by the appellant which were not considered in the former opinion. The first point urged is that the court erred in permitting nonexpert witnesses to testify to their conclusion or opinion that McKennan was sick and hurt and suffered pain. It is said that this invaded the province of the jury.    We think there is no merit in this contention.    In 2 Jones, Commentaries on Law of Evidence, sec. 366, it is said, quoting from a New Hampshire case (*Hardy v. Merrill,* 56 N. H. 227): " 'But without reference to any recognized rule or principle, all concede the admissibility of the opin-

ions of nonprofessional men upon a great variety of un-scientific questions arising every day and in every judicial inquiry.    These are questions of identity, handwriting, quantity, value, weight, measure, time, distance, velocity, form, size, age, strength, heat, cold, sickness and health, questions also concerning various mental and moral aspects of humanity, such as disposition and temper, anger, fear, excitement, intoxication, veracity, general character and particular phases of character, and other conditions and things, both moral and physical, too numerous to mention.'  Admittedly difficult as the task of framing a rule on the subject is, Foster, Chief Justice, in the New Hampshire case referred to, formulated a rule, which, if properly applied, will serve as a useful instruction.  *Opinions of witnesses derived from observation are admissible in evidence when, from the nature of the subject under investigation, no better evidence can be obtained.*"  See, also, 3 Wigmore, Evidence, sec. 1974; *Hewitt v. Eisenbart,* 36 Neb. 794; *Western Travelers Accident Ass'n v. Munson,* 73 Neb. 858.

It is next claimed that there was error in permitting Dr. Pepper to testify relative to finding the plaintiff in a convulsive condition six months after the occurrence of the injury without connecting this incident as a result of the accident.  The court probably admitted this testimony upon the theory that it would be connected up afterwards, which it was within its discretion to do.  The question which brought out the testimony only had reference to the appearance of McKennan when the physician was called, and it could not be foreseen by the court what the answer would be.  The question was not improper.  No motion was made either at that time or in any later part of the trial to strike out this testimony upon the ground that it had not been connected with the accident.  In order to save the point for review this was necessary.

Objection was also made to the reception of evidence relative to the expectoration or vomiting of blood by the plaintiff without showing that it was the natural or probable result of the accident.  The testimony of plaintiff's

surgeon was that such bleeding would be improbable, but not impossible, as a result of the injury. Other physicians testified much to the same effect. The court, at the request of defendant, gave an instruction to the effect that defendant should not be held responsible for any spitting or vomiting of blood by the plaintiff that is not shown by the evidence to have been caused by the accident of January 20, 1911, and that it is the probable and not the possible cause that should be considered by the jury. The evidence may not have been of much weight, but it was for the jury to determine whether there was sufficient evidence to justify a conclusion that the spitting of blood resulted from the injury.

Complaint is made that the court erred in submitting to the jury whether the speed of the car was the proximate cause of the accident, whether the failure to have the car under control was the proximate cause, and whether the failure to exercise ordinary care in striking the wagon was the proximate cause. By instruction No. 6 the jury were told: "That under the pleadings and evidence in this case the only charge of actionable negligence that you are required to consider is that after the plaintiff started to turn upon the street railway track on which the south-bound car was running, or while he was in a position of peril or danger by reason of having his wagon upon such track, the defendant, in the exercise of ordinary care, should and could have so reduced the speed of said car or stopped the same as to avoid striking or colliding with his wagon." By instruction No. 7 the jury were told, among other things: "If you believe from the preponderance of the evidence that an ordinarily prudent man would not have been running the car at the rate of speed which you find from the evidence that the car was running at the time the operator of the car discovered the plaintiff on the track, and that the rate of speed was the proximate cause of plaintiff's injury, then you should find the defendant was negligent in that particular." By the ordinances of the city the car might lawfully be operated at any speed up to 15 miles an hour. The testimony is that

before the collision the car was moving at the rate of from 8 to 12 miles an hour, as variously estimated by the witnesses. The court further instructed the jury: "If you find from a preponderance of the evidence that defendant did not have his car under such control at the time the motorman discovered plaintiff on the track as an ordinarily prudent person operating a car under like circumstances would have done, and that such failure was the proximate cause of plaintiff's injury, then you should find the defendant negligent in that particular."

These directions are inconsistent with instruction No. 6, tended to confuse the jury, and were prejudicial. As long as there were no indications that the track would be obstructed, the defendant was not negligent in operating its car within the legal rate of speed, and, if it was so doing at the time the plaintiff turned to go upon the track, the rate of speed could not constitute negligence. As the court had said, the only ground of actionable negligence was whether the defendant might have slowed down or stopped the car in time to avoid the injury after the plaintiff's wagon was upon the track.

Complaint is made that plaintiff was allowed to exhibit scars on his body made as the result of certain surgical operations; one of them being from an operation for appendicitis. "It is a too well-settled rule in this court to call for further discussion that the plaintiff in an action for damages for personal injuries may be permitted to exhibit to the jury, if he can do so, the contusions and wounds of which they consist." *Felsch v. Babb,* 72 Neb. 736. But the scars here exhibited were not from wounds occasioned at the time of the accident, and it would seem that the exhibition was unnecessary. We are not convinced that the error was prejudicial, since the amount of the verdict is not so great as to indicate that the passions of the jury were inflamed or their sympathy aroused. Such exhibitions, however, are not to be encouraged, and, unless they furnish evidence material to the question to be determined, should not be indulged in.

One of the paragraphs of instruction No. 11 is severely criticised by defendant for alleged erroneous statements therein contained. We are relieved from critically considering these alleged mistakes, for the reason that this particular portion of the instruction was specifically requested to be given by the defendant itself in No. 15 of its requests. The court having given the instruction, defendant cannot now complain that it was erroneous.

Upon the whole case, we think that errors prejudicial to defendant occurred at the trial. The former opinion is modified in the respects mentioned, but the conclusion was correct and is adhered to.

The motion for rehearing is

OVERRULED.

HAMER, J., dissenting in part and concurring in the conclusion.

I regret my inability to fully agree with the majority opinion. The case is here on the motion of the plaintiff for a rehearing for the purpose of having us overrule our opinion reversing the judgment of the district court (95 Neb. 643), and it also has been heard upon certain assignments made by the defendant. There was a verdict and judgment in the court below for $3,900 in favor of the plaintiff. The plaintiff was driving his wagon on the street car track, and was going south over the west line of said track on Twenty-fourth street in Omaha. His excuse for being on the street car track with his wagon is alleged to be that there was another wagon on the west side of the street going in the same direction which he was going, and that he went upon the street car track for the purpose of going around this wagon. Witnesses testified at the trial that there was no such wagon. The plaintiff's testimony was not corroborated in full by the testimony of any witness. Paul Meek, a boy, testified for the plaintiff that he saw McKennan go around a *standing team,* but could not see whether the team was hitched or had a driver. I am unable to find testimony showing that any other witness

saw this team. Mary Meek, Reynolds, the motorman, Edward Galloway, Dean Berlin, J. A. Nichols, and Edgar F. Doyle, all testified that they saw no other team there. Paul Meek's testimony does not support the plaintiff's testimony and is unreasonable. If the plaintiff had gone around the 'team which he speaks of, it would have been behind him. This team is alleged to have been going south. If traveling in that direction, it would have been penned in when the accident occurred, and would have been there with the wagon, the street car, and the accident, and *everybody would have seen it.* In discussing the case we should not lose sight of its circumstances.

It was prejudicial error for the court to instruct the jury: "That defendant had the legal right to operate its cars over and upon its tracks at the time and place in question, and that teamsters have the legal right to cross the street at any point thereon, and their rights in this respect are equal and reciprocal, that is, each has the right to the use of the street in the ordinary and usual manner, and in doing so it is necessary for each to take into consideration the rights of the other." As the plaintiff had not crossed the street, but was driving along it on the street railway track *between the intersections,* the instruction was misleading, for the reason that it calls attention to an alleged state of facts not shown to exist. I am not satisfied with the paragraph in the syllabus of the majority opinion relating to this matter. It is not, as it seems to me, specific enough, and is objectionable for that reason. The body of the opinion touching the same matter is objectionable in the same way, although it shows research and many decisions.

Where the driver of a wagon drives along the street on the street car track, it is unfair to the public that he should be allowed to compel the street car to reduce its rate of speed to the same slow pace which he takes. The street car should be allowed to run at such a rate of speed as will accommodate the public. The better right of the street car company to the use of its tracks does not give it the right to exclude travelers from the street, and

such travelers should be allowed to move along the tracks or across them at any time and place where the same does not interfere with the progress of the cars, but of necessity, and in the interest of the public, where there is a conflict, the individual traveler must subserve the public convenience by yielding the right of way. *Hot Springs Street R. Co. v. Johnson,* 64 Ark. 420, 42 S. W. 833.

In *Laufer v. Bridgeport Traction Co.,* 68 Conn. 475, the court approved of the following instruction: "In the actual use of a common and public highway every person has an equal right to use it for his own best advantage to suit his own convenience or pleasure, but at all times with a just regard to the like rights of every other person. So far as rendering himself liable to damages is concerned, a man may drive fast or slow, with a light wagon or with a loaded team, with a well-broken horse or with an ill-broken one, along a crowded thoroughfare as well as a vacant street, provided he does not interfere with the just rights of any other person. If a man wishes to drive fast, he must do so with respect to the rights of those who drive slow. If he desires to drive slow, he must do so with respect to those who desire to drive fast. The loaded team and the light wagon must each pay a due regard to the rights of the other. If one drives in a crowded street he must exercise reasonable care not to endanger other travelers. If he drives an ill-broken horse, he must keep it so well in hand as not to expose others to unreasonable hazard."

Since the application of electric power to the running of street cars, it may be said that they have a common right in the streets with travelers, but they must be so managed as not to interfere unreasonably with the rights of persons who are passing along the streets. The street railway company and the traveler should each use the street in view of the rights of the other and to avoid inflicting an injury, and each is bound to exercise reasonable care. *Rapp v. St. Louis Transit Co.,* 190 Mo. 144; *Hall v. Ogden. City Street R. Co.,* 13 Utah, 243.

In *Harris v. Lincoln Traction Co.*, 78 Neb. 681, the plaintiff crossed the tracks in the middle of a block. This court held that, "having contributed to the accident by his own negligence, there is no principle of law which will allow him to recover, unless he shows that he was wilfully and wantonly run down by those in charge of defendant's car." The writer does not indorse the statement here made. The street railway company should exercise reasonable prudence to avoid injury to those who occupy its tracks under all circumstances.

The above duty of the street railway company should not bar the right of the public to be served by the application of modern motive power to their means of transportation. It is the duty of persons, whether on foot or in vehicles, to give unobstructed passage to the cars. *Ford's Adm'r v. Paducah City Railway,* 124 Ky. 488, 99 S. W. 355; *Ehrisman v. East Harrisburg City P. R. Co.*, 150 Pa. St. 180, 17 L. R. A. 448.

Subject to the rule that he must exercise ordinary care for his own safety and not obstruct the passage of the cars, a person may drive upon the tracks of a street railway company laid in a public street without becoming a trespasser, but it is his duty to leave the track whenever his presence there serves to impede the passage of cars. *North Chicago E. R. Co. v. Peuser,* 190 Ill. 67.

Between street crossings a street railway company has a paramount right of way over its tracks whenever its right conflicts with the rights of a traveler on the street, and such traveler must reasonably give way to an approaching or passing car. The duty to exercise reasonable care and prudence in order to avoid injury rests alike upon the street railway company and the traveler. In an emergency, where the motorman in charge of the car honestly attempts to avoid injury to the occupant of the street, he should not be required to exercise the best judgment that may be applied to the subject after the event has gone by. If one acts with ordinary prudence in view of the situation and does his best then to avoid accident and consequent injury, he is not to be held to have been negligent, even

Haight v. Omaha & C. B. Street R. Co.

though his acts may not have been wise as determined afterwards in the light of all the surrounding facts.

I concur in the conclusion stated in the majority opinion that the former opinion should be modified and the motion for a rehearing overruled.