EDGAR P. WRIGHT, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED MAY 19, 1917. No. 19327.

1. **Master and Servant:** INJURY TO SERVANT: NEGLIGENCE: QUESTION FOR JURY. In this an action for damages for personal injuries sustained by a street railway conductor by coming in contact with a charged wire, the evidence is examined, and *held* to require the submission to the jury of the question whether the defendant was negligent in maintaining such wire at the height of 5½ feet above the top of the railway car at the point where the accident occured.

2. **Appeal:** DEMONSTRATIVE EVIDENCE. Where there was a sharp conflict in the testimony as to the existence of any permanent injury to or deformity of the plaintiff's spine, defendant was not prejudiced by the court permitting the plaintiff to bare his body so that the doctors testifying in his behalf could better describe the nature of the injuries claimed to have been sustained.

3. **Excessive Damages.** Under the facts proved, a verdict for $30,000 is excessive.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed on condition.*

*John L. Webster* and *William Ross King*, for appellant.

*Sutton, McKenzie, Cox & Harris*, contra.

LETTON, J.

This is an action to recover damages for personal injuries. The plaintiff was a conductor in the employment

of defendant, and was in charge of an electric street car at the time of the accident. At one end of the run the car was turned by means of what is known as a "Y." In this operation the car is backed over a switch track forming one side of the "Y." In June, 1914, about midnight, on a dark and rainy night, the trolley pole left the wire while the car was being switched. It was the duty of plaintiff to replace the trolley upon the wire by means of a rope attached thereto, which was also fastened to the car. The rope broke close to the upper end of the trolley pole as the pole sprang up. There was no street light near. As soon as the trolley left the wire the lights in the car went out. Plaintiff testifies that, as was his duty, he went upon the top of the car to release the trolley pole and place it upon the wire; that he had never been upon the top of the car for this purpose at this point; that he had been instructed before he began to work and shown how to do this by an old conductor assigned for the purpose by the defendant; that he was told that the wires were not within striking distance of his head, and that, even if one did strike his head, there was no danger as long as he was standing on the top of the car; that he was told that, when the rope broke and he had to go on the top of the car, it was his duty to push the trolley pole against the wire so as to move the car forward far enough to pull the trolley pole from between the cross-wires; that he followed these instructions; that the motorman moved the car up a little; that he was about to stop him when his head struck, he received the shock, and knew nothing more until he was picked up from the ground. Other testimony is to the effect that the wires at the place where the plaintiff was injured were 5 feet 6 inches from the top of the car. The plaintiff was 5 feet 9 inches tall.

The negligence charged is that defendant was negligent in constructing and maintaining the wires in an unlawful, careless and dangerous manner about 5 feet above the top of the car; that defendant, while knowing the state of the wires, was negligent in not advising the plaintiff of the

dangerous construction, and in failing to warn him of the dangers incident to putting the trolley pole on the wire at this place, and was negligent in not providing insulation for the trolley pole, and in failing to provide sufficient tools or equipment for placing the pole upon the wire without exposing plaintiff to danger.

The answer denies negligence, alleges that the plaintiff was familiar with the manner of construction of the tracks, cars, trolley poles, and trolley wires, and knew the dangers incident to the operation of his work; that plaintiff had been a conductor for $3\frac{1}{2}$ years prior to the accident, and was familiar with the construction and elevation of the trolley wires at that place for all of said time, and that, knowing the danger, he negligently took hold of the trolley pole; that the accident was brought about by his own carelessness and neglect of duty, and that the pole and wires were maintained and constructed in the usual and proper manner. The jury returned a verdict in favor of plaintiff for the sum of $30,000. Defendant appeals.

The court instructed the jury that the only acts of negligence charged against the defendant for them to consider were "that the defendant company was guilty of negligence in the method or manner of constructing or maintaining its overhead wires at the place of the accident in question," and "that the defendant company was guilty of negligence in failing to notify the plaintiff of the dangers incident to working on top of the car in close proximity to the wires," and that if they failed to find by a preponderance of the evidence that the defendant was guilty of negligence in either of these particulars their verdict should be for defendant.

A number of assignments of error are made with respect to the introduction of evidence, but we find no error so prejudicial to defendant as to require a reversal. The evidence is in conflict as to the proper height at which such wires should be maintained, as to the height above the top of a car at which wires were maintained at other

localities in the city, as to whether Wright had been fully instructed with respect to the dangers which might be incurred by coming in contact with charged wires, and upon almost every other material fact involved.

It is also assigned that the court erred in permitting the exhibition of plaintiff's body in the presence of the jury. The doctors called as witnesses by plaintiff testified that the injury had induced the disease of spondylitis deformans, and had caused a permanent deformed condition of the spine, pointing out on plaintiff's body the consequences of the injury as in their opinion they existed. For the defendant several witnesses, doctors and surgeons of long experience and high standing in the profession, testified that no degeneration of the vertebræ had taken place, and that the stooped and bent-over condition of plaintiff was caused by a neurasthenic condition; that the disease mentioned did not exist; that the X-ray pictures did not disclose a wasting away of the spinal processes; and that the bent condition of plaintiff was not permanent if he made an effort to overcome it and straighten up. There was no error in the exhibition of plaintiff's body to the jury under such circumstances. *Felsch v. Babb,* 72 Neb. 736; *Booth v. Andrus,* 91 Neb. 810. There were no scars of other wounds to confuse the jury as in the case of *McKennan v. Omaha & C. B. Street R. Co.,* 97 Neb. 281.

Aside from the claim that the damages are excessive, the principal contentions of the defendant are the lack of evidence of negligence in the construction and maintenance of the wire at that height, and that Wright had been in the service long enough to see and had ample opportunity to know the danger of short circuits, and that he did not come against the wire by reason of ignorance, but through inadvertence.

Considering the evidence as a whole, we are satisfied that it was sufficient to submit these questions to the jury. Wright had worked on this run for over 3 years. He must have been aware in a general way of the height of the wires, but to a man looking from the ground a difference

of about 3 inches in the height of a wire 17 or 18 feet from the ground would be almost imperceptible. There is no proof that he was ever upon the top of the car at a point nearer than 30 feet from where the accident occurred, or at any point where the wires were as low as here. A difference of 3½ inches in the height of the wire would have placed it beyond the reach of his head. The accident occurred at midnight on a dark and rainy night. The lights in the car were out by reason of the connection being broken. Ordinary care and prudence would seem to dictate that, where a conductor may be required under such circumstances as these to go upon the top of the car in the dark, the wire should be high enough so that no part of his body might come in contact with it, or other precautions be taken to prevent such an accident. There is no definite proof on behalf of defendant that such a dangerous construction was maintained at the height at which approved methods of street railway construction in the country generally are maintained, and the evidence is not so clear as to justify the removal of the question from the jury. We find no error in the instructions which are complained of covering these points.

The principal complaint is that the verdict is so excessive that it must have been the result of passion or prejudice. In his original petition plaintiff prayed for $25,000 damages. At the trial he was permitted to amend his petition to ask for $35,000. He was earning $93 a month at the time of the accident, or $1,116 per annum. His expectancy was shown to be 28.96 years. The verdict was for $30,000. If the opinions of the medical witnesses for the plaintiff are well founded, as the jury believed, plaintiff is entitled to substantial damages for the pain and anguish he has suffered, for the permanent disability, and for the humiliation occasioned by his deformity, in addition to the amount which he would be entitled to recover for the loss of his earning capacity. The medical testimony is in such sharp conflict as to the existence of the deforming disease that it is to be regretted that the law does

not permit a re-examination as in cases under the workmen's compensation act. We must accept the finding of the jury on this point. There is ample evidence to support it, if the contrary opinions are rejected, as the jury had a right to do. Considering the present worth of his earnings for the period of his expectancy and the other elements of damage, it would seem that a recovery of $30,000 is excessive, and that the evidence does not justify a recovery of more than $20,000. The judgment of the district court is affirmed upon plaintiff entering a remitittur of $10,000; otherwise it is set aside and a new trial allowed.

JUDGMENT ACCORDINGLY.