JOHN H. LUCAS, APPELLEE, v. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 17, 1920.    No. 20764.

1. **Street Railways: USE OF STREETS.** The general public has the right to the use of a public street and every part thereof, regardless of whether there is a street car track on it or not; but the public has not at all times the same right to the use of that part of the street upon which the tracks are laid as has the street car.

2. ———: ———. When the time comes that the use of that part of the street upon which tracks are laid is required by the street car, it is the duty of the public to turn aside and allow the street car unobstructed passage. The public should not use the streets in such a manner as to unnecessarily hinder or interfere with the free movement of cars operated thereon.

3. ———: ———: CARE REQUIRED. The rights of the public and the street cars in the use of the street are equal and reciprocal. Each in the exercise of his rights must exercise ordinary care for his own safety and the safety of others.

4. ———: NEGLIGENCE: INSTRUCTION. When the cause of action is based upon the claim that the motorneer in charge of the car negligently ran into the plaintiff, an instruction that if the motorneer in charge of the car knew, or "should, in the exercise of reasonable care and caution, have known, that plaintiff was in a position of danger," and which instruction in other respects states the law correctly, is not erroneous.

5. ———: ———. Whether it is negligence for a pedestrian to exercise his right to use the street by walking upon a street car track, and, if so, the degree of such negligence, must be determined by the peculiar circumstances surrounding each case.

6. **Municipal Corporations: Use of Streets: Care Required.** The user of the street, whether vehicle, pedestrian, or street car, must exercise the ordinary care of prudent men under the circumstances, and the care exercised must be commensurate with the danger.

Appeal from the district court for Douglas county: Lee S. Estelle, Judge. *Affirmed on condition.*

*John L. Webster,* for appellant.

*W. J. Connell, contra.*

Day, J.

Plaintiff recovered a judgment against the defendant for $13,937 for personal injuries claimed to have been sustained on account of the defendant's negligence. Defendant has appealed.

The defendant owns and operates by electric power a street railway system, a part of which is laid upon Military avenue in the suburbs of the city of Omaha, and at the point where the accident occurred the tracks run in what may be termed an east and west direction. There are but few houses in the vicinity of the accident, no street lights, and no sidewalks upon either side of the roadway. There was, however, a cinder path extending along the south side of the parallel tracks. Immediately north of the tracks there was a paved roadway wide enough for vehicles to pass, and north of the paved roadway a dirt road. On December 28, 1916, at about 10:30 o'clock on a dark and cloudy night, the plaintiff was injured by being struck by one of the defendant's cars. At the time of the accident he was walking west along the north track. The street cars en route to the Country Club and Benson pass over the north track, while the cars going in the opposite direction, towards Omaha proper, run upon the south track. The plaintiff was employed as a caretaker at the Country Club, and at the time of the accident was on his way to the club house. A few minutes before the accident he had passed over this street, going to the house of an ac-

quaintance, and had observed a 'depression in the side of the street where the walking was particularly bad by reason of snow and ice, and on his return to the club house, in order to avoid and go around this bad place in the street, he went upon the defendant's north track. He proceeded to walk upon the north track 25 or 30 paces, a distance of 60 or 70 feet, when he was struck by a car approaching him from behind. He did not see or hear the car, and was totally oblivious of its presence. In fact, he did not know that it was a car which struck him until told the next day. The plaintiff testifies that before going upon the track he looked to see if there was a car approaching, and saw none; that from the point where he looked he could have seen the light on a car in the direction from which one would approach, a distance of 300 feet, at which point the crown of a hill would obstruct further vision. It appears from the testimony that the headlight on the car would reflect the light along the track a distance of 100 feet with sufficient clearness to observe objects; that the car was running without any power, drifting along a slight downward grade about 12 miles an hour, and could have been stopped by the use of appliances then in hand in a distance of 12 feet.

At the close of the testimony the defendant moved for a directed verdict in its favor, which motion was overruled. The basis of defendant's motion rests upon the claim that the plaintiff was guilty of such a degree of negligence in walking upon the north track without keeping a constant lookout as to preclude his right to recover. The first question suggested by the motion is: What are the respective rights of a street car and a pedestrian to the use of that part of the street occupied by the street car tracks? Are the rights equal and reciprocal, or does the street car possess a superior right? The authorities upon this question are not in entire accord. This court has adopted the rule that a traveler passing along the public street has the right to use every

part of it, regardless of whether there is a street car track on it or not. The streets and highways are intended for public use, and the public is not deprived of that use by the fact that a privilege has been granted to a street car company to lay a track along the street and operate cars thereon. The grant is a privilege to occupy and use the streets in conjunction with, and not to the exclusion of, the general public. *Omaha Street R. Co. v. Duvall,* 40 Neb. 29. The street car in its use of the street is a part of the public, and every user, whether street car, vehicle, or pedestrian, has the same equal and reciprocal right. Each is bound to take into consideration the rights of the other, and each is bound to exercise ordinary care for his own safety, and to prevent injury to others. In view of the inability of a street car to turn out of its course or leave the track, it becomes the duty of other users of the street not to unnecessarily hinder or delay the street car in its movements, and when a time comes when the use of a particular part of the street occupied by the tracks is required by the street car, the other users must turn aside and allow it unobstructed passage. To this extent the right of a street car may be said to be superior to the right of other users. This priority of right is based upon two reasons: First, the inability of the car to turn or leave the track; and, second, being engaged in a public service, the rights of the public are superior to the rights of the individual. While the driver of a vehicle and a pedestrian have an equal right with the street railway company upon a public street, they have not at all times the same right upon a track of the street car company, and the use by the public must be such as not to hinder or interfere with the cars operated thereon. *McKennan v. Omaha & C. B. Street R. Co.,* 97 Neb. 281.

The plaintiff having the legal right to use the street, the question then arises: Was he negligent in the exercise of his right under the circumstances of this case? Where a particular part of the street is set aside for

the particular use of pedestrians, and sidewalks are con-
structed and in proper repair, under ordinary circum-
stances the pedestrian should use that part of the street
designated for his use, and his failure to do so would be
a circumstance to be considered in determining whether
he was negligent in using other parts of the street for
travel. Generally speaking, the court cannot dogmati-
cally say what group of facts may constitute negligence,
and there can be no hard and fast rule to determine
what facts may constitute negligence. Each case must
be determined by its own peculiar facts, and measured
by the standard of the act of an ordinarily prudent per-
son. In the instant case the plaintiff went upon the
track to go around, as he says, a bad place where the ice
and snow had accumulated, and where the walking was
extremely dangerous. There was no sidewalk in the
vicinity. He looked before he went upon the track, and
had walked thereon about 60 or 70 feet when he was
struck by the car. Under all the circumstances shown,
we are not prepared to say that, as a matter of law, the
plaintiff's acts present such a degree of negligence as
to require an instructed verdict against him on the
ground of negligence in going upon the track. The facts
presented are such that reasonable minds might take
different views upon the question of the plaintiff's neg-
ligence, and under such circumstances, under the oft-re-
peated rule of this court, the question becomes one for
the jury to pass upon, and not for the court.

There is a direct conflict in the testimony of the plain-
tiff and the defendant as to where the plaintiff was just
prior to the happening of the accident. The plaintiff
testifies that he went upon the north track, and walked
thereon a distance of 60 or 70 feet, and that at no time
was he upon the south track; whereas, the motorneer
testifies that he saw the plaintiff about 75 feet ahead of
the car, walking on the south track, and when the car ap-
proached within 6 or 8 feet of the plaintiff he suddenly

ran in front of the car on the north track, when it was too late to avert the accident. The motorneer is cor-roborated somewhat by one of the passengers, who testi-fies that just before the accident he saw an object on the south track, but was unable to say that it was a person, or to be more specific.

The defendant contends that the court erred in giving instruction No. 3. That instruction was, in substance, that the question of negligence to be considered by the jury was whether the motorneer in charge of the car knew, or "should, in the exercise of reasonable care and caution, have known, that plaintiff was in a position of danger," so that, in the exercise of ordinary and reason-able care, the defendant could have avoided the accident. The particular criticism of this instruction raises the point that by the use of the words, "or should, in the exercise of reasonable care and caution, have known," placed upon the defendant a greater burden than the law imposes. The defendant insists that the rule applicable to the last chance doctrine applies only in cases where the peril is actually discovered, and has no application where the peril might have been discovered by the exer-cise of ordinary care. There is ground for considerable doubt whether the facts of this case present a situation which calls for the application of the so-called last chance doctrine. Upon the plaintiff's theory of the case he was walking at all times upon the north track at such a distance ahead of the car that his presence could readi-ly have been seen in ample time to have avoided the in-jury by the exercise of ordinary care. This situation calls for the application of the ordinary rules of negli-gence and contributory negligence. The testimony of the defendant was that the plaintiff was walking upon the south track, and that when the car approached to within 8 or 10 feet of him he suddenly stepped upon the north track. The testimony indicates that the car could have been stopped in a distance of 12 feet. Under this testimony, it would have been impossible for the motor-

neer to stop the car after he discovered the plaintiff's position. It does not appear to us that under defendant's version of the facts a case within the last chance doctrine is presented. But, even so, we think the rule announced by the trial court correctly states the law. Authorities are to be found, and a number are cited in defendant's brief, which support defendant's position; but this court has adopted the rule that liability arises when the peril is known, or by the exercise of ordinary care should have been known. A party is bound by what he knows, and the law charges him as knowing that which would have been discovered by the exercise of ordinary and reasonable care. This principle is stated in the following cases: *McKennan v. Omaha & C. B. Street R. Co.*, 97 Neb. 281; *Gross v. Omaha & C. B Street R. Co.*, 96 Neb. 397; *Acton v. Fargo & M. Street R. Co.*, 20 N. Dak. 434.

A number of other objections are made against the instructions, but we do not deem it necessary to enter into a discussion of each of the objections raised. The points herein discussed, as we view it, are the ones of most importance. We have examined, however, all of the instructions of the court, and under the issues presented they fairly and fully state the law of the case, and the rights of the defendant have been carefully guarded, and the disputed questions of fact submitted to the jury. In our opinion, the defendant has no reasonable ground to complain against the instructions. This case in all of its phases falls within the rule announced in *McKennan v. Omaha & C. B. Street R. Co.*, 97 Neb. 281. In that case the injured party was driving a vehicle along the track, but we can see no legal distinction between the respective rights of a driver of a vehicle and a pedestrian. Outside of the question of contributory negligence, there can be no possible legal distinction.

Finally, it is insisted that the amount of damages awarded by the jury is excessive. The testimony indi-

cates that the plaintiff, at the time of the accident and for some time prior thereto, had been employed as a caretaker of the Country Club. Prior to that he had been employed in a similar capacity in another club. His earnings at the time were from $35 to $45 a month and his board. He was 54 years of age. The injury which he sustained resulted in the loss of the greater part of his foot, leaving remaining only the heel, and also some impairment of his hearing, although upon that question there is a conflict in the testimony. The amount of damages awarded was $13,937. We believe that the damages awarded, in view of all the circumstances as shown by the record, are excessive, and that the facts would not warrant a verdict to exceed $8,000. If the plaintiff will file a remittitur in this court within 40 days of such sum in excess of $8,000, the judgment will be affirmed; otherwise, it will be reversed and the case remanded for a new-trial.

AFFIRMED ON CONDITION.