PAUL SACCA, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JUNE 23, 1914. No. 17,702.

**Street Railways**: INJURY TO PEDESTRIAN: EVIDENCE. The evidence is examined, its general nature and effects stated in the opinion, and *held* insufficient to support a judgment against the defendant.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*John L. Webster, W. J. Connell* and *William Ross King,* for appellant.

*William P. Lynch* and *Joel W. West, contra.*

SEDGWICK, J.

Paul Sacca, a little boy between five and six years of age, was injured by one of the defendant's cars, and Anton Sacca, as next friend, brought this action in the district court for Douglas county to recover damages caused by such injuries. He obtained a verdict and judgment in the district court, and the defendant has appealed.

It is contended that the pleadings and evidence are not sufficient to support the verdict and judgment. It appears that Paul was attending the kindergarten department of the school on Leavenworth street between Seventeenth street and Seventeenth avenue, in the city of Omaha. The schoolhouse fronts the south, and is located at about the middle of the block. The defendant maintains a double-track street car line along Leavenworth street in front of the school building and operates many cars thereon. There were 20 or 24 children in Paul's class in the school, and it was a common thing for them to cross the street car tracks upon leaving the school. It was therefore the custom of the teacher to keep the class together in regular order and "assemble them on the curb" until she gave them the signal to cross the street. It is suggested in the plaintiff's brief that the children as a class were not under the control of the teacher at this time, but "were rushing down the steps pell mell;" but this suggestion is not sustained by the evidence. One witness testified that he saw the children rushing down the steps "to the curb and then stop." This is in harmony with the testimony of Miss McGavock, who testifies that a little Hungarian child "started across before the signal was given. * * * This little Hungarian child broke away before Paul. Until the little Hungarian child broke away from the ranks and started across the street, there was not anything to indicate to me, or to the motorman coming down the grade, that any child would attempt to cross the track in front of that car." It appears that Paul followed immediately after the other child.

The east-bound car had just passed on the farther track, and another car following soon after passed a west-bound

car nearly in front of the schoolhouse. Paul ran across the track just behind the west-bound car, and, as seen by Miss McGavock, was struck by the fender of the car going east. "When it hit him, the child threw up his hands, fell, rolled up, and the projection over the wheel hit the child in the head." According to the testimony of another witness who saw the accident: "He (Paul) ran in the rear of the west-bound car. He started immediately. He seen the west-bound car coming by there, and, just as he got in the rear of the west-bound car, he apparently, to my notion, seen the car coming east and tried to stop himself, but he was running at such a terrific speed he could not stop himself. He ran right into the car. I stood there shocked, or I could have almost grabbed him."

The court instructed the jury: "Plaintiff bases his right to recover in this action upon two charges of negligence on the part of the defendant: First, that defendant at the time and place in question negligently and carelessly operated its car at a high and dangerous rate of speed; second, that at the time and place in question the defendant negligently failed to have its car which struck the plaintiff under proper control." Does the evidence establish either of these charges of negligence? In considering whether the car was being driven in an unreasonable and dangerous rate of speed, it should be remembered that it was immediately in front of the schoolhouse where there were many children of various ages who frequently had occasion to cross these tracks. The conditions, therefore, called for about the same degree of care that should be observed in crossing a street frequented by the public of all ages. Miss McGavock, their teacher, was in charge of these children, and was interested and active to protect them so far as she was able. She viewed the whole transaction, and she testified in behalf of the plaintiff that "both east-bound cars were running at the usual speed, which is quite fast sometimes. The second car, which struck the boy, was running at the usual rate of speed of cars going down Leavenworth. I could not tell the rate of speed. I

96 Neb. 29

suppose it was a moderate rate of speed, and not a high rate of speed."

The witnesses generally estimate that the east-bound car was running about five or six miles an hour, and one witness estimates it as high as seven miles an hour. The child evidently was not aware of the coming of the east-bound car, the car going west obstructing his view, and, running across the first track behind the west-bound car, he ran directly into the other car. It is impossible that the proximate cause of the accident could have been the speed of the car.

It is likewise impossible to support the verdict on the ground that the "defendant negligently failed to have its car which struck the plaintiff under proper control." The evidence is somewhat conflicting as to how far the car ran after the accident. Some witnesses thought it ran a car length, about 40 feet, others estimated the distance at about twice that far. The motorman testified: "When I was proceeding down grade, coming east, before I met the west-bound car, I saw the children standing out on the sidewalk. This was an everyday occurrence. They had been in the habit of standing there every day when I made that trip. Just as I passed the rear end of the west-bound car, I saw this boy about two feet, not more than two feet, from the fender, side of the fender, and in his struggle to keep from running into the car, he fell." There is no evidence that he saw, or could have seen, the boy before he was within two feet of the car. The control of the car that this motorman may or may not have had, running as it was at from five to seven miles an hour, could not have affected the result. It is clear that there is no evidence of negligence on the part of the defendant, and that the instruction submitting these questions was erroneous.

The judgment of the district court is reversed and the cause remanded.

REVERSED.

LETTON, FAWCETT and HAMER, JJ., not sitting.