PAUL SACCA, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED APRIL 3, 1915.     No. 17702.

1. **Appeal:** WITHDRAWAL OF ISSUE OF NEGLIGENCE. Under all the circumstances of this case, the action of the trial court in withdrawing the question of the child's negligence from the jury was not prejudicial.

2. **Street Railways:** INJURIES TO INFANT: SUFFICIENCY OF EVIDENCE. Evidence reexamined, its substance stated in this opinion and in our former opinion in 96 Neb. 447, *held* sufficient to sustain the verdict and judgment.

REHEARING of case reported in 96 Neb. 447. *Former judgment of reversal set aside, and judgment of district court affirmed.*

MORRISSEY, C. J.

This case is now before us on rehearing. The original opinion, which contains a sufficient statement of the issues, may be found in 96 Neb. 447. Counsel for defendant contended on the original hearing, and still contend, that the pleadings and evidence are insufficient to support the verdict and judgment. On the former hearing the judgment was reversed because, in the view taken of the evidence, it did not show actionable negligence on the part of the defendant. Counsel for plaintiff in a well-written brief now undertake to point out material portions of the evidence which had not been urged upon the attention of the court heretofore.

Plaintiff bases his right to recover on two grounds: First, that the car was being operated at too great a speed under the circumstances; second, that the defendant failed to have its car under proper control.

The schoolhouse was located on a *quasi* business street, and the grounds occupied the entire space between Seventeenth avenue and Seventeenth street, being a short block. The steps leading from the sidewalk to the schoolhouse are near the center of this block, and the children had been in the habit of crossing the street in front of the schoolhouse in place of using the regular foot crossings at each end of the block. This was the custom which had long prevailed and must have been known to the defendant. The school board had adopted no rule governing the action of the children in crossing this street, but the teacher, recognizing the danger, had attempted to establish a rule under which she would restrain the children, and keep them in a body upon the sidewalk until she gave them permission to cross the street car tracks. Her testimony indicates that this rule, or custom, was not always obeyed by the children. The day this accident occurred was the first day of school after vacation; the children were dismissed about 11 o'clock, and at the time there was a car on the north line of track, being the line nearest the schoolhouse, going west, and two cars on the south line of track, one traveling some distance behind the other, going east. The teacher did not give the customary signal for the children to cross, but it appears that one little boy, referred to in the evidence as the "Hungarian boy," ran across the street after the first east-bound car had gone by, and immediately in the rear of the west-bound car. This boy got across the street without injury. The Sacca boy, no doubt inspired by the action of the little Hungarian boy, broke away from the group and attempted also to cross the street, but he was struck by the second east-bound car and severely injured. Defendant contends that the west-bound car and the second east-bound car passed one another almost immediately in front of the schoolhouse steps, and that this little Sacca boy darted

Sacca v. Omaha & C. B. Street R. Co.

across the street so close to the rear end of the west-bound car that he was not seen, and could not be seen, by the motorman on the east-bound car until the car was within two feet of him, and the motorman so testified. We think, however, that the weight of the testimony shows clearly that the boy did not pass so close to the rear end of the west-bound car as contended for by the defendant. The Hungarian boy left the group on the north side of the street, passed behind the west-bound car, and safely reached the south side. The west-bound car was moving at the usual rate of speed, and it is evident that it must have passed several feet to the west between the time the Hungarian boy crossed the tracks and the time the Sacca boy crossed. The west-bound car having proceeded a considerable distance, there was nothing to obstruct the view of the motorman. Had he been as watchful as the circumstances would appear to require, he would have seen this little Hungarian boy running across the tracks, and this would have put him on his guard and suggested the likelihood of other children following. Whatever may have been the custom of the teacher in keeping the children together until she gave them the signal to cross, it is clear that on this occasion she did not succeed in doing so.

The motorman testified: "When I was proceeding down grade, coming east, before I met the west-bound car, I saw the children standing out on the sidewalk. This was an everyday occurrence. They had been in the habit of standing there every day when I made that trip." The witnesses who have attempted to estimate the speed of the car place it at from five to seven miles an hour, and this, it is contended, negatives a finding that it was running at a high and dangerous rate of speed, or was not under proper control. While this testimony is not orally contradicted, it is shown to be incorrect by the facts surrounding the accident. Witnesses can rarely estimate accurately the speed of a moving vehicle. In this case there was nothing to direct their attention to the speed of the car until the accident became imminent, and then their attention would naturally be fastened upon the boy, and

not upon the speed of the car. The proof discloses that the air brakes were in good order, and that they carried between 70 and 80 pounds of air, and, notwithstanding the fact that the motorman applied the emergency brake, the car traveled, according to the testimony of the motorman, over 40 feet, and, according to the testimony of other witnesses, 80 or 100 feet before it was brought to a stop. There is a slight downgrade at this point, but nevertheless it must have been the speed of the car that prevented the motorman from bringing it to an earlier stop after he applied the emergency brake.

In the condition of this record, the maxim *res ipsa loquitur* may well be applied. This accident occurred at a point on the street which had long been used as a crossing by children of tender years. The motorman had seen them assembled upon the sidewalk. He ought to have seen one of their number run across the street in front of his car. The conditions were such as to put him upon his guard, and he might well have anticipated when the first child crossed that others would attempt to follow him. Under these circumstances, we believe the evidence going to show a high and dangerous rate of speed and lack of control is sufficient to sustain the finding of the jury.

It is urged that the court erred in taking away from the jury the question of contributory negligence on the part of the child. Without attempting to fix the exact age at which a child may be said to be responsible for his acts, and capable of being guilty of negligence, we believe that this child, who was under six years of age, cannot, under all of the circumstances of the case, be charged with negligence, and that the action of the court in withdrawing this question from the jury was not prejudicial. The child was of such tender years that it cannot be deemed in law possessed of sufficient discretion to make it guilty of negligence for its failure to exercise due care for its safety.

Error is assigned for the giving and refusal to give other instructions, but, in the view we take of the case, it would serve no useful purpose to discuss them. Considering the charge as a whole, we are satisfied that the is-

Sacca v. Omaha & C. B. Street R. Co.

sues were fairly stated to the jury, and submitted to them under a correct rule of the law.

No error being found in the record, the former opinion in this case is set aside, and the judgment of the district court is

AFFIRMED.

SEDGWICK, J., dissenting.

If there was negligence of defendant which was the proximate cause of the boy's injury, plaintiff should recover; otherwise not. The majority opinion disposes of the question whether the defendant was negligent, in these words: "Under these circumstances we believe the evidence going to show a high and dangerous rate of speed and lack of control is sufficient to sustain the finding of the jury." That is, the speed of the car was "high" and there was "lack of control." It is indicated in the opinion that the speed was more than seven miles an hour, but how much more or what the probable rate of speed was, as shown by the evidence, is not stated. This seems a little indefinite as a basis of a charge of negligence. The opinion says that the car traveled, "according to the testimony of the motorman, over 40 feet, and, according to the testimony of other witnesses, 80 or 100 feet before it was brought to a stop." The evidence is greatly strained to derive such a conclusion. A witness who was so near that he could have touched the boy says the car ran about 40 feet after the boy ran against it. He is supported by many witnesses. One witness makes a guess that the car may have run 100 feet, and this overthrows the evidence of many other witnesses, both for plaintiff and defendant, who say the car was running at a rate of from three to five miles an hour. But this is the only reason given for supposing that the speed was great or that the car was not "under control." It is conceded that the boy ran against the car. When he saw the car he was running so fast, and the car was so near, that he could not avoid "running into it." Then the motorman stopped the car within 100 feet. This does not seem to prove that he was not in proper control of his car. Such an allegation must be established

affirmatively if it is to be made a ground for applying the "last clear chance" doctrine. There must be evidence that the boy was in a place of danger, and the motorman saw him, or ought to have seen him, while so situated, and that the motorman failed to use such means to avoid injuring him as an ordinarily prudent person so situated would have used. There is no such evidence. ·

The opinion says: "We think, however, that the weight of the testimony shows clearly that the boy did not pass so close to the rear end of the west-bound car as contended for by the defendant. * * * The west-bound car having proceeded a considerable distance, there was nothing to obstruct the view of the motorman." The conclusion is that he was not "as watchful as the circumstances would appear to require." If the motorman could have seen the boy, the boy could, of course, have seen the approaching car. That the boy did not see the car is certain. He could not stop himself, but ran right against the car. And so we see the opinion makes an unusual application of the "last clear chance" doctrine. The boy ran against the car and hurt himself. The motorman ought to have seen him and stopped the car, so that the boy could cross the tracks in safety. The boy did not see the car, but he was too young to see cars, and the motorman was old enough to see the boy. And, in explanation of this legal principle, we have in the opinion the statement that the boy was too young to be charged with negligence. This seems to me to be a strange misunderstanding of the legal principle which it seeks to apply in this case. If the defendant is negligent, and that is the proximate cause of the injury, and the plaintiff has arrived at the age of discretion, and was also negligent, which contributed to the injury, his negligence is said to be contributory, and he cannot recover. But if the party injured has not arrived at the age of discretion, and the defendant's negligence was sufficient to cause the injury, the defendant is liable, because in such case the plaintiff cannot be held responsible for contributory negligence. That question, however, was not in this case. The defense was solely that the defendant was not negligent.

Sacca v. Omaha & C. B. Street R. Co.

To support that defense it is alleged that the boy ran against the car; that the injury was caused solely by the act of the boy, and not by any act or neglect of the defendant. So young a boy may not be guilty of contributory negligence in the technical legal sense of the word, but such a boy could hurt himself by running against a street car. To say that a young boy cannot be careless or negligent and so hurt himself seems very wide of the mark, and an instruction that the jury must not regard the carelessness or negligence of the boy in running into the car would virtually be an instruction to find for the plaintiff. It would be construed to mean that, no matter what the boy did, the defendant must avoid injuring him or pay damages; that is, they must insure the boy against hurting himself, and he not a passenger, but a trespasser.

The opinion does not attempt to explain how the speed of the car could have been the cause of the accident. Of course, if the car had run faster, it would have passed before the boy desired to cross the tracks, and no accident would have occurred; but it is not suggested that it was not running fast enough. To say that, if it had run slower, no accident would have occurred is predicated upon a similar mode of reasoning. If the car had remained at the street crossing, the boy would not have found any obstacle in his way. He ran so near the west-bound train that he did not see the car he ran against until it was too late to stop his momentum. If the car had been moving at two miles an hour, or standing, the result would have been the same. The company owes a duty to the persons who patronize the cars as well as to others, and, if a reckless boy can make his own cause of action by running against a car, we will have such restrictions as will make the service useless, or the cost of maintaining it prohibitive.

BARNES, J., concurs in this dissent.