CHARLES P. M. ALLEN, Administrator, Appellee, v. DES MOINES RAILWAY COMPANY, Appellant.

No. 42379.

MARCH 13, 1934.

REHEARING DENIED JUNE 23, 1934.

Corwin R. Bennett, for appellant.

Kelly, Shuttleworth & McManus and Fred C. Huebner, for appellee.

MITCHELL, J.—On the afternoon of September 25, 1930, Francis T. Allen, a boy of the age of eight years and eight months, was returning from school to his home. In order to reach his home it was necessary that he cross Ingersoll avenue at Forty-first street, in the city of Des Moines. Ingersoll avenue runs in an easterly and westerly direction. The distance between the property lines in the northerly and southerly direction on Ingersoll avenue is 100 feet. There are two sets of street car tracks between Fortieth and Forty-second streets. They are located approximately in the center of the street. The street car tracks are separated from the pavment by a header or curbing. There is a curb that extends along each side of the north and south sides of the street car track. On the south side of Ingersoll avenue between Fortieth and Forty-second streets, the distance between the south curb line to the curb line or header on the south side of the street car tracks is 19½ feet. On the north side the distance is the same. The space in the north and south direction between the curb line and header, which is on the south side of the street car tracks, and the south rail of the south track is 3½ feet.

On the occasion of this accident a street car was traveling on Ingersoll avenue, approaching the intersection at Forty-first street from the west, and, the record shows, the motorman had a clear and unobstructed view towards said intersection for more than a block. Francis Allen, with two of his boy friends, Raymond Poage and William McNally, was on his way home from school, which was a block or so south of Ingersoll avenue. The boys were scuffling and playing. They had been confined in the schoolroom all day and were working off some of the excess energy that had accumulated during the day. Young McNally intended to board the street car at

Forty-first street and Ingersoll avenue, and the other two boys decided that they would see he did not board it. And thus they started scuffling and running around. When they reached Forty-first street McNally broke away from the other two and ran west on Forty-first street. Francis Allen and his friend took after McNally and chased him down the street some little distance. When they had reached a point approximately 40 or 50 feet west of the west line of Forty-first street they gave up the chase, and Francis Allen started back towards Forty-first street, running along the street car track until he reached the east side of Forty-first street and about the place where pedestrians cross the street railway crossing, when he turned to the north and was struck by the street car. He died a few hours later from the injuries he received.

Charles P. M. Allen, who is the father of Francis Allen, was appointed administrator of his estate, and commenced this action against the Des Moines Railway Company. The case was submitted to a jury. The jury returned a verdict of $5,750. In the time provided by law the appellant filed a motion for a new trial and exceptions to the instructions, which motion was overruled by the lower court. The appellant not being satisfied with the ruling of the lower court upon said motion, and the verdict of the jury, has appealed to this court.

The appellant complains that the record does not support the first ground of negligence charged in the appellee's petition, which is failure on the part of the motorman to maintain a proper lookout.

This court in the case of Wilflin v. Des Moines City Ry. Co., 176 Iowa 642, 644, 156 N. W. 842, said:

"The motorman was bound under the law to keep a lookout for vehicles on the street. If he sees a vehicle on the track ahead, or in the exercise of ordinary care should have done so, it is his duty to bring his car under such control as to avoid a collision if the driver of the vehicle shall not leave the track. The rule is applicable to all vehicles, and, whenever overtaking another in its line of progress and a possible obstacle in the way, a proper regard for the rights of others requires that the car be reduced to such control that it may be immediately brought to a standstill if necessary."

It is the contention of the appellee that the motorman in this case did not keep that careful and constant lookout ahead and to the

right and left which it was his duty to keep, under the foregoing decision. The record shows that the motorman had a clear and unobstructed view ahead for over a block. There is evidence in this record that these boys were playing in the street. A man driving an automobile, approaching from the west, saw them and. stopped his automobile some 50 feet away from where the boys were, in order to prevent running into them. Francis Allen ran down the street to the west a distance of some 40 feet west of the west line of Forty-first street, and then turned and ran towards the east. There is evidence in this record that in running east he covered a distance of 96 feet, and during most of that time he was in plain view of the motorman, at least during the last block that he traveled before the accident occurred, and yet there is evidence in the record that the motorman did not reduce the speed of the street car or apply the brakes until the moment that the car struck Francis Allen. Certainly, in the face of such record the jury had a right to find that the motorman either was not keeping a proper lookout ahead, or he failed to heed that which he could have seen had he looked. The lower court was justified in submitting, as one of the grounds of negligence, failure to keep a proper lookout.

Appellant also complains that it was error to submit to the jury the second ground of negligence in appellee's petition, which is that the street car was traveling at an excessive and negligent rate of speed. In the case of Altfilisch v. Wessel, 208 Iowa 361, 367, 225 N. W. 862, this court said:

"Manifestly, a speed of 6 miles per hour would not, under ordinary circumstances, constitute negligence. That it might be so under some circumstances may, no doubt, be true."

In the case of Livingstone v. Dole, 184 Iowa 1340, at page 1350, 167 N. W. 639, this court said:

"Necessarily what speed will be adjudged negligent depends on the local surroundings, the use being made of the street, and the like."

And so, in the case at bar, the motorman in charge of the appellant's street car saw, or in the exercise of reasonable care should have seen, the decedent and the other boys playing in the street, for he had a clear and unobstructed view for over a block. And yet he proceeded into the intersection at Forty-first street at a rate of speed

which some witnesses testified to was between 30 and 35 miles an hour. And there is evidence that he did not apply the brakes or make any effort to stop the street car until after the street car had struck Francis Allen.

In the case of Johnson v. Abbot's Alderney Dairies, 295 Pa. 548, 145 A. 605, "when children are on the street, or in the act of crossing, plainly visible, his obvious duty on approaching the spot is to bring his car under such control as the circumstances demand, so that, responsive to the child's capricious acts, he can stop to avoid injury."

And in the case of Doran v. C. R. & M. City Ry. Co., 117 Iowa 442, 446, 447, 90 N. W. 815, the court said: "In other words, we do not understand it to be the rule that the motorman of a street car may run his car at a high rate of speed, even though such speed would not in itself be unlawful, notwithstanding he sees that a person on the street is liable to be dragged or taken upon the tracks, and is under no obligation to check his car or prepare to avoid a collision until it becomes certain that a collision will take place unless the car is stopped. * * * But the rule requiring the motorman of an electric car to do what he reasonably can to avoid a danger which is reasonably apparent seems to us too elementary to require elaborate citation of authorities. It would certainly not be necessary in all cases that the car be stopped as soon as it becomes evident that animals on the highway have become uneasy and even frightened, but it certainly is his duty to take reasonable steps by way of reducing the speed of the car to avoid an injury which he may anticipate as likely to result from the frightened condition of animals on the street."

In the case at bar there is evidence that the street car, as it crossed Forty-first street, was proceeding at a rate of speed of between 30 and 35 miles an hour. The motorman had a clear and unobstructed view. The boys were playing in the street and near the railway company track. There is evidence that there was no attempt to reduce the speed of the street car until it struck the decedent. Willie McNally, one of the boys who was playing and scuffling that day with Francis Allen, and who testified on behalf of the appellant company, stated he was standing on the west side of the intersection of Forty-first street and Ingersoll avenue, holding up his papers,

signaling the street car to stop, that he might board it. But the motorman for some reason or other either did not see Willie Mc-Nally or was unable to stop, for he did not stop the street car. Certainly, in the face of such a record, there was sufficient evidence for the court to submit to the jury the grounds of negligence of excessive speed, and also for failure to have the car under proper control.

The appellant also complains that it was error to submit to the jury the ground of negligence charged in the appellee's petition, which is failure to give a warning. It is true there was a dispute in the record as to whether or not the motorman sounded a warning. But several witnesses who were near the scene of the accident at the time, testified that no bell or warning of any kind was given. In view of the record, there was sufficient evidence to submit this ground of negligence.

The appellant also complains of the fact that the court submitted to the jury one of the grounds of negligence charged in the appellee's petition, which is failure of the motorman to apply the brakes. Again we find that there was a conflict in the testimony in this matter, but there is the testimony of two disinterested witnesses, who witnessed the accident, that the brakes were not applied until the street car struck Francis Allen. It thus appears that there was an abundance of evidence in the record, justifying the submission to the jury of the motorman's negligence in not applying the brakes and thereby avoiding the accident.

During the trial of the case, Mr. Gilbert, the motorman, of the appellant's street car at the time of the accident, was asked this question: "Was there anything you could have done which would have stopped that car quicker than it was stopped at that time?" There appears in the record the answer, "No, sir," and then the objection of the appellee's attorney, "Objected to as calling for an opinion and conclusion of the witness and invading the province of the jury." The court then sustained the objection. The appellant complains about the ruling of the court upon this objection. The question clearly asked for an opinion and conclusion, asking the witness to give his opinion and conclusion as to whether there was anything he could have done that he did not do that would have stopped this street car quicker than it was stopped. It invades the province of the jury because one of the grounds of negligence charged in the petition and submitted to the jury was as to whether

or not the motorman properly applied the brakes. Other grounds of negligence charged in the petition and submitted to the jury are as to whether the motorman kept a proper lookout; whether he was proceeding at a negligent rate of speed under all the circumstances and conditions; whether he sounded any gong or bell, and whether he had the street car under such control as to be able to slow down and stop said car within a reasonable distance. All or practically all of these grounds of negligence inhere in and involve the question as to whether the motorman could have done anything more than he did that would have stopped this car quicker than it was stopped, so the question propounded to Gilbert goes to the very ultimate facts and issues to be determined by the jury, and therefore it invades the province of the jury.

The appellant also complains of instruction No. 12 covering the question of contributory negligence. We find, however that the court in instruction No. 1 charged the jury that the plaintiff must prove by a preponderance of the evidence that said decedent was free from contributory negligence, and in instruction No. 11 the jury was also charged that the plaintiff must prove, by preponderance of the evidence, that plaintiff decedent was free from any negligence which contributed in any degree thereto. Thus as a whole as given by the court we find no error upon the question of contributory negligence.

The appellant argues with a great deal of force that the verdict is excessive. The amount of the verdict was $5,750. In the former decisions of this court we do not find where any verdict for the death of a child near the age of this decedent has been permitted to stand in any amount such as rendered in this case. It is of course an exceedingly difficult matter to ascertain just what size verdict should be permitted to stand. Especially is this true in a case in which the life of a smart, active, enthusiastic, eight-year-old boy is involved, whose future looked bright and who would have had the opportunity to secure an education that he might properly be prepared to win success in life.

One of the ablest discussions of the question which now confronts the court was by the late Justice Weaver in the case of Nicoll v. Sweet, 163 Iowa 683, 687-8, 144 N. W. 615, L. R. A. 1918C, 1099, Ann. Cas. 1916C, 661: "It is correct to say, as does the appellant, that the only true measure of recovery for the death of an indi-

vidual is the value of his life to his estate, had he not come to such untimely end. It is hardly too much to say that this rule is vague, uncertain, and speculative, if not conjectural; but it is the best which judicial wisdom and experience has yet been able to formulate. No evidence is possible of the time which deceased would have lived but for the injury complained of. Had he avoided this injury, death may have met him the next day, week, or year in some other form. In business he might have become a phenomenal success and accumulated millions, or he might have lived to old age and died a pauper. From a man of good habits and prudence and industry, he might have become a spendthrift or a tramp, or if a man of dissolute habits he might have reformed into an efficient and prosperous citizen. But the demands of justice will not tolerate the idea that human life may be extinguished by the tort of another without the wrongdoer being held to answer therefor in damages, and the rule we have stated is the one which has been devised for this purpose. The principle which underlies it is of unquestionable soundness, but the difficulty which besets its practical application is in the fact that it calls for an estimate or conclusion which must be arrived at by a balancing of mere probabilities and possibilities which we deduce by way of inference from the age, character, habits, condition, education, employment, surroundings, and apparent capacity of the deceased. Fairness to the beneficiaries of the estate on the one hand and of the defendant on the other require that the jury be put in possession of all the facts having the slightest legitimate bearing upon this intricate problem. It is concededly the law of this state that in such case the plaintiff may show that the deceased was a married man. Wheelan v. Railroad Co., 85 Iowa 178, 52 N. W. 119. This is said to be competent because 'it may fairly be assumed that a married man will be more frugal and industrious and hence will accumulate a larger estate than a single man.' Beems v. Railroad Co., 58 Iowa 158, 12 N. W. 222."

Again in the case of Hanna v. Central States Electric Co., reported in 210 Iowa, page 864, on page 877, 232 N. W. 421, the court said:

"The rule governing the proposition under consideration may be stated as follows:

" 'The jury in awarding damages cannot exercise their discretion arbitrarily, but they must proceed upon the theory of compensation

(for pecuniary loss) to the beneficiaries and the award must be justified by the evidence. The discretion of the jury in awarding damages is always subject to the superior power of the court which will not hesitate to set aside a verdict where the damages allowed are out of all proportion to the pecuniary injuries resulting from the death of the beneficiary, or founded upon visionary estimates, or probability or chances, where the circumstances of the case or the evidence produced indicates that the verdict was the result of bias or prejudice.' 17 C. J. sec. 235, p. 1347."

Thus, in the light of the cases cited and the rules of law well established by this court, and in view of the former decisions as to the amount of damages in cases of this kind where the decedent was a child around eight years of age, we believe the verdict should be cut to the sum of $4,500.

With these considerations in mind, it is adjudged that if the appellant-administrator shall elect to file a remittitur in excess of the sum of $4,500 within thirty days from the filing of this opinion, with the clerk of this court, judgment for the amount of $4,500 and the taxable costs will be affirmed. Otherwise the judgment heretofore entered in the district court will be reversed.—Affirmed on condition.

CLAUSSEN, C. J., and STEVENS, ANDERSON, KINTZINGER, KINDIG, DONEGAN, and EVANS, JJ., concur.