EDWARD WILFONG, ADMINISTRATOR, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED SEPTEMBER 20, 1935. No. 29281.

*Kennedy, Holland & De Lacy,* for appellant.

*S. L. Winters, contra.*

Heard before Goss, C. J., Good, Eberly, Day, Paine and Carter, JJ., and Redick, District Judge.

Eberly, J.

This is an action by Edward Wilfong, administrator of the estate of Edward Wilfong, Jr., deceased, against the Omaha & Council Bluffs Street Railway Company for negligently causing the death of his son and intestate. The deceased was nine years old at the time of his death, which took place in Omaha, Nebraska, approximately five hours after the occurrence of the accident.

The petition sets up two causes of action, viz.: The first for $10,000 on account of "physical pain and suffering which said deceased sustained from the time he was injured" by the impact of defendant's street car "until the time of his death;" the second for $15,608 under the provisions of sections 30-809 and 30-810, Comp. St. 1929 (Lord Campbell's Act). However, the second cause of action also sets forth that the next of kin have incurred for the deceased a hospital bill in the sum of $34; a doctor's bill of $200; and a funeral bill of $374, all necessitated by the injuries inflicted upon the deceased by the defendant.

The defendant denied generally the allegations consti-

tuting plaintiff's first cause of action; challenged the right of plaintiff to recover thereon, for the reason that no action was commenced thereon in the lifetime of the deceased; and also alleged "that said deceased was of the age of 9; that he and other children were playing in the park on the east side of the company's tracks and that the said child ran up a steep bank and out onto the company's track in front of the oncoming street car at a time when it was impossible to stop said car," and alleged that the injuries to said minor "were the direct and proximate result of his own negligence," and that his negligence "was more than slight and was the proximate cause of his injury and subsequent death."

The defendant, in answer to the second cause of action, in effect, denied all allegations of negligence charged, and pleaded contributory negligence on part of the deceased.

By appropriate reply plaintiff joined issues.

On such issues there is a sharp conflict in the evidence. There is no question that the injuries causing the death of Edward Wilfong, Jr., were occasioned by a street car of the defendant on August 13, 1932, as it was then being operated north from Martha street along the east side of Thirty-second street, across Creighton boulevard, and along the west side of Hanscom Park, in the city of Omaha. Near a point where the boundary lines of Francis street, if extended eastward, would intersect with Thirty-second street, the deceased was struck by this car, knocked down, and carried by it some 38 feet. The injuries inflicted caused his death some four and a half to five hours thereafter. Immediately east of the street car tracks at the scene of the accident was a row of thick weeds and also a dense growth of trees along the west side of Hanscom Park. The motorman of the car which came in contact with deceased testified on cross-examination as follows: "Q. And your car went north at about a rate of 18 miles an hour? A. I made a mistake about that 18 miles an hour. Q. You did? A. I sure did; it was 10 or 12 miles an hour at the most. Q. What made you change it? A. I

don't know. * * * Q. I mean in an emergency case like this, how soon could you make a stop with your emergency? A. I don't think you could stop it in more than 30 or 35 feet. It was a little down grade." He also testified that a platform situated near the scene of the accident was a "regular stop;" that he was in the habit of keeping a lookout for children there, and that his orders required this. On his direct examination he had previously testified as follows: "A. As we left Creighton avenue, I gave it five points and threw it off and allowed it to drift down to there, and I was going, I should judge, about 18 miles an hour, and when I got about 30 feet from this here, this brick there, this boy ran right out through the weeds, right in front of me, not more than 6 feet ahead of me, and I swung on the brakes and left them there, left the brakes right there. * * * Q. Where was he when you first saw him with reference to the weeds? A. I never saw him until he came out of the weeds. I never saw anybody there until it was just like coming out of the weeds in front of me here."

There is partial corroboration of the foregoing testimony by other witnesses for the defendant.

Plaintiff's witness, Helen Thomas, a girl 14 years of age, then attending Central High School in Omaha, testified that she resided at 2207 South Thirty-second street; that, in the forenoon of the day of the accident, Bobbie Bock, she, and Edward Wilfong, Jr., were playing "follow-the-leader" in Hanscom Park, and were, in the order named, playing immediately east of the street car tracks when Edward "started south down the tracks," and went south on the track a distance of "about 55 feet." She was watching him all the time, and then Edward saw the street car coming and turned around and went about 15 feet north, and in his excitement he put up his hands. This witness stated: "The street car hit him after he got about 15 or 20 feet" north. "I yelled, 'Edward is hit,'" and "ran as fast as I could to Mrs. Wilfong's house."

If this evidence is to be believed, the deceased was in

plain view of the oncoming street car during the time he was passing over a distance of from 70 to 75 feet, and obviously in a place of danger. This version of the affair also finds corroboration in the record before us.

The squarely conflicting evidence presented was resolved by the trial jury in favor of plaintiff.

"In a law action, where negligence is an issue and the evidence respecting it is in conflict, the question is for the jury." *Campbell v. Slater,* 127 Neb. 231.

The trial court submitted the case to the trial jury under the humanitarian rule, or the "last clear chance" doctrine. The last clear chance doctrine in this state, as applied to the situation here presented, is that, when a street car runs against a person causing his injury, liability arises, when the peril is discovered by the motorman, or by the exercise of ordinary or reasonable care and caution could have been discovered, in time to have avoided the injury. See *Omaha Street R. Co. v. Duvall,* 40 Neb. 29; *Krummack v. Missouri P. R. Co.,* 98 Neb. 773; *Lucas v. Omaha & C. B. Street R. Co.,* 104 Neb. 432; *Wilson v. Union P. R. Co.,* 107 Neb. 111; *Hanford v. Omaha & C. B. Street R. Co.,* 113 Neb. 423; *Porto Rico Railway Light & Power Co. v. Miranda,* 62 Fed. (2d) 479; *Allen v. Des Moines R. Co.,* 218 Ia. 286.

It is to be remembered that the deceased was but nine years of age, and that the scene of the accident was located at a place known to be frequented by children, or at least the orders which were admittedly received by the motorman from his employer contemplated such a situation. Under such conditions a greater degree of diligence was required than at places where danger is not so apparent. See *Mitchell v. Tacoma Railway & Motor Co.,* 9 Wash. 120; *Bergen County Traction Co. v. Heitman's Admr.,* 61 N. J. Law, 682; *Sample v. Consolidated Light & Railway Co.,* 50 W. Va. 472; *Sacca v. Omaha & C. B. Street R. Co.,* 98 Neb. 73; *Schrage v. Miller,* 123 Neb. 266; *Allen v. Des Moines R. Co.,* 218 Ia. 286; *Grabenc v. Union P. R. Co.,* 67 Fed. (2d) 567.

Indeed, courts of high standing have announced the rule that, under circumstances similar to those presented in the instant case, the motorman should anticipate that children would be playing on the street and might run in front of a moving car. *Camardo v. New York State Railways,* 247 N. Y. 111; *Denver City Tramway Co. v. Brown,* 57 Colo. 484; *Devine v. Chicago City R. Co.,* 167 Ill. App. 361; *Childress v. Southwest M. R. Co.,* 141 Mo. App. 667; *Lederer v. Connecticut Co.,* 95 Conn. 520.

We are also of the opinion that the trial court committed no error in its refusal to give the instruction requested by defendant on the subject of contributory negligence. The present case was submitted to the jury on the sole question of the last clear chance. This jurisdiction is committed to the rule that, "Although a party may have negligently exposed himself to an injury, yet, if the defendant after discovering his exposed situation negligently injures him, or is guilty of negligence in not discovering his dangerous position until too late, and the plaintiff is because thereof injured, he may nevertheless recover." *Omaha Street R. Co. v. Martin,* 48 Neb. 65. See, also, *Lucas v. Omaha & C. B. Street R. Co.,* 104 Neb. 432; *Omaha Street R. Co. v. Larson,* 70 Neb. 591; *Zitnik v. Union P. R. Co.,* 91 Neb. 679; *Zelenka v. Union Stock Yards Co.,* 82 Neb. 511.

It is quite obvious that the last clear chance rule is here controlling, and that questions of contributory negligence are excluded. The reason has been expressed by courts of high standing in substantially the following language: "The person who has the last clear chance of avoiding an accident is considered in law solely responsible for the accident notwithstanding the negligence of the person injured." 45 C. J. 989. See *Zelenka v. Union Stock Yards Co.,* 82 Neb. 511.

The defendant further challenges a recovery under the first cause of action, which was based on pain and suffering of the deceased, for the reason that no action was commenced during the lifetime of the injured party. Defendant's contention is that the common-law rule prevails in

Nebraska, and that a correct statement of the common law applicable to the facts of the instant case is: "At the common law a cause of action for injury to the person although property was incidentally affected did not survive regardless of the form in which it was brought, and the English statutes passed in the reigns of Edward III. and William IV., which modified the common-law rule respecting the survival of causes of action for injuries to real and personal property, did not change the common-law rule respecting the survival of causes of action for injuries to the person." In support of this proposition defendant cites 1 R. C. L. 31, sec. 26.

Conceding this to be a correct statement of the common-law rule, as it formerly existed in England, the question still remains as to what extent it has been adopted in this jurisdiction. By express legislation in this state it is restricted to the following: "So much of the common law of England as is applicable and not inconsistent with the Constitution of the United States, with the organic law of this state, or with any law passed or to be passed by the legislature of this state, is adopted and declared to be law within the state of Nebraska." Comp. St. 1929, sec. 49-101.

In the interpretation of this statutory provision, in *Bishop v. Liston*, 112 Neb. 559, Good, J., stated the following conclusion: "This does not signify, however, that the common law is in full force and effect in Nebraska. If it is inapplicable to our needs and conditions, or conflicts with constitutional or statutory provisions, it is not in force." See, also, *Moran v. Moran*, 101 Neb. 386; *Murray v. Omaha Transfer Co.*, 95 Neb. 175.

In reference to this common-law rule on which defendant relies, Sir Frederick Pollock, in his work on Torts (12th ed.) pp. 60-62, in discussing the effect produced on this liability by a death of either the person wronged or the wrong-doer, declares it to be one of the "least rational parts" of our law. He states: "The common-law maxim is *actio personalis moritur cum persona,* or the right of action for tort is put an end to by the death of either party, even

if an action has been commenced in his lifetime. The maxim is 'one of some antiquity, but its origin is obscure and post-classical.' * * * A very similar rule existed in Roman law, with the modification that the inheritance of a man who had increased his estate by *dolus* was bound to restore the profit so gained, and that in some cases heirs might sue but could not be sued. Whether derived from a hasty following of the Roman rule or otherwise, the common law knew no such variations; the maxim was absolute. At one time it may have been justified by the vindictive and quasi-criminal character of suits for civil injuries. A process which is still felt to be a substitute for private war may seem incapable of being continued on behalf of or against a dead man's estate, an impersonal abstraction represented no doubt by one or more living persons, but by persons who need not be of kin to the deceased. Some such feeling seems to be implied in the dictum, 'If one doth a trespass to me, and dieth, the action is dead also, because it should be inconvenient to recover against one who was not a party to the wrong.' * * * But when once the notion of vengeance has been put aside, and that of compensation substituted, the rule *actio personalis moritur cum persona* seems to be without plausible ground."

In this state, damages for torts are limited to compensation for injury actually sustained. Exemplary or punitive damages have never been recoverable in any action in the courts of Nebraska. See *Riewe v. McCormick,* 11 Neb. 261; *Winkler v. Roeder,* 23 Neb. 706; *Rosewater v. Hoffman,* 24 Neb. 222; *Atkins v. Gladwish,* 25 Neb. 390; *Bank of Commerce v. Goos,* 39 Neb. 437; *Bee Publishing Co. v. World Publishing Co.,* 59 Neb. 713.

The situation thus presented suggests the ancient conception of the common law that "The law is the perfection of reason, that it always intends to conform thereto, and that what is not reason is not law." 1 Cooley's Blackstone (3d ed.) *70.

In view of present conditions, it is plain that the en-

forcement of the maxim under consideration to the full extent of its original scope would be manifestly absurd and unjust. However, by section 9, art. I of the Constitution of 1867 (our Declaration of Rights), it was expressly enacted: "All courts shall be open, and every person, for any injury done him in his lands, goods, person, or reputation, shall have a remedy by due course of law, and justice administered without denial or delay." Reenacted in identical terms in the Constitution of 1875, it is continued in our present Constitution as section 13, art. I. It seems that a true interpretation of this provision provides a complete answer to the question which now confronts us.

"The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court, therefore, should constantly keep in mind the object sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied." 12 C. J. 700.

Section 13, art. I of our Constitution is self-executing.

"Constitutional provisions are self-executing when there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given, or the enforcement of a duty imposed. That a right granted by a constitutional provision may be better or further protected by supplementary legislation does not of itself prevent the provision in question from being self-executing; nor does the self-executing character of the constitutional provision necessarily preclude legislation for the better protection of the right secured. A constitutional provision which is merely declaratory of the common law is self-executing. A constitutional provision designed to remove an existing mischief should never be construed as dependent for its efficacy and operation on legislative will." 12 C. J. 729.

It is to be noted that this conclusion that section 13, art. I of our Constitution, is self-executing, is quite in harmony with the action heretofore taken by this court in

the interpretation of this constitutional provision. See concurring opinion of Maxwell, J., in *State v. Elder*, 31 Neb. 169, 183; *Carlsen v. State, ante*, p. 84; *Douglas County v. Vinsonhaler*, 82 Neb. 810; *Fitch v. Martin*, 80 Neb. 60; *State v. Reneau*, 75 Neb. 1; *McNamara v. McNamara*, 86 Neb. 631.

In view of the obvious evil sought to be prevented or remedied by the constitutional provision quoted, so far as "personal injuries" are concerned, the purport of its language is to wholly invalidate and destroy the legal effect and force of the common-law maxim, viz., *actio personalis moritur cum persona*.

In *Waller v. First Savings & Trust Co.*, 103 Fla. 1025, in construing a provision of the Florida Constitution identical with our own, the language of Davis, J., in the majority opinion, sets forth reason fully sustaining the conclusion herein announced. He says, in part: "The *reason* for the English law rule to the contrary was that a tort action died with the tort-feasor because a tort action was regarded as punitive in character, all of which has been changed in Florida by the intendment of our Declaration of Rights which recognizes not only the punitive nature of a tortious wrong done, but also recognizes and preserves in organic language a legal 'remedy' for that wrong, and provides that the courts shall always be open to afford it."

Indeed, in the case of *In re Estate of Grainger*, 121 Neb. 338, without reference to or consideration of section 13, art. I of our Constitution, the rule was announced: "The right to an action for personal injury does not abate by reason of the death of the wrong-doer before the action was brought." This amounted to a distinct repudiation of the common-law rule.

It follows, in view of the principles embodied in our "Declaration of Rights," that the courts of this state must be open at all times to afford "a remedy by due course of law" for "any injury done him (a party) in his * * * person * * * without denial or delay," and without refer-

ence to the subsequent death of the wronged party or the wrong-doer.

Prior to the decision in *In re Estate of Grainger, supra,* the rule was firmly established in this state that "a pending action for personal injuries does not abate by the death of the plaintiff," even though "the plaintiff dies from personal injuries for which he brought suit." *Murray v. Omaha Transfer Co.,* 95 Neb. 175. However, the appellant cites *Webster v. City of Hastings,* 59 Neb. 563; *Forbes v. City of Omaha,* 79 Neb. 6; *Sheibley v. Nelson,* 83 Neb. 501; *Levin v. Muser,* 107 Neb. 230; *Hindmarsh v. Sulpho Saline Bath Co.,* 108 Neb. 168, in support of the proposition that in Nebraska, where death ensues as the result of personal injury, a suit, unless brought during the lifetime of the injured person, cannot be maintained by his administrator for the reason that such action does not survive under the laws of Nebraska, but abates at the death of the injured party. In every case cited, however, save and except *Forbes v. City of Omaha,* 79 Neb. 6, an action in tort had been commenced prior to the death of the plaintiff, and the sole question presented by the record was whether an action so commenced would survive under our revivor statute, which question this court answered in the affirmative.

In such *Forbes* case the injured plaintiff did not depart this life, but successfully maintained her suit in the district court and secured an affirmance of the judgment there rendered. The question of whether an administrator of a deceased who died from injuries inflicted by a tort-feasor could institute and maintain an action for the pain and suffering of his intestate between the infliction of the injuries and his death occasioned thereby was not presented by the record in any of the Nebraska cases upon which appellant relies. This question, therefore, could not have been judicially determined therein, and any discussion thereof, if such there be, in the opinions filed in said causes would not be binding upon this court, but would amount to dicta merely.

In a broad sense the claim for personal injury recognized and created by this constitutional provision, as applied to torts, is "a chose in action." As this constitutional provision neither expressly nor by necessary implication requires the institution of a suit prior to the injured person's death as a condition precedent to recovery by his administrator, nor in any manner conditions the remedy it provides on that fact, the amount that the injured person would be entitled to recover in his lifetime would amount to damages to his personal estate, which on his death would go to his next of kin to be distributed as personal estate. Therefore, the cause of action does not abate, but survived, and the contention of the appellant on this point must be overruled. See *Murray v. Omaha Transfer Co.,* 95 Neb. 175; *Lehmann v. Farwell,* 95 Wis. 185; *Rogers v. Windoes,* 48 Mich. 628; *Brown v. Chicago & N. W. R. Co.,* 102 Wis. 137; *Cleland v. Anderson,* 75 Neb. 273; *McGarvey v. Independent O. & G. Co.,* 156 Wis. 580; *Bennett v. Bennett,* 116 N. Y. 584; *Fowlie v. First Minneapolis Trust Co.,* 184 Minn. 82.

The appellant predicates error on the action of the trial court by the instruction submitting as part of the first cause of action the reasonable value of the medical, surgical, hospital, and burial expenses that the father was put to incident to the treatment and burial of his said son. As has already appeared, the allegations covering these items constituted a part of the second cause of action, and the first cause of action of the petition contained no reference thereto. We are committed to the view that the administrator in a case such as the instant one may recover on behalf of the parent "funeral expenses incurred for an unmarried minor child whose death was caused by defendant's negligence." *Killion v. Dinklage,* 121 Neb. 322.

In the instant case the items covering this claim were properly alleged; plaintiff's evidence establishing the same was properly received; and no objections to the instruction of the court submitting these items to the consideration of the jury are now presented, save and except that they were

submitted as part of the first cause of action when they constituted in fact part of the second cause of action. The jury returned a separate verdict on each cause of action and the recovery for these items was provided for in the verdict on the first cause of action and was not included in the verdict on the second cause of action. It is self-evident, therefore, that the alleged error in no manner increased the aggregate of plaintiff's recovery.

"According to the weight of authority, if each of several independent counts, or causes of action, not otherwise repugnant, is sufficiently alleged and is sustained by the proof, a general verdict assessing entire damages is sufficient." 25 Standard Ency. of Procedure, 970. And, "It is not ordinarily necessary for a jury to separately assess the different elements of recovery, unless required by statute, or by the court to do so." 25 Standard Ency. of Procedure, 965.

We do not find that the trial in the instant case required the jury to return a separate verdict on each cause of action. The correct amount of their general verdict for plaintiff is ascertainable from the verdict actually returned. It thus affirmatively appears that the error or defect in the proceeding here presented is one which does not affect the substantial rights of the complaining party, and therefore must be disregarded. Comp. St. 1929, sec. 20-853.

The judgment of the district court is correct, and is

AFFIRMED.